STATE, Respondent v. BARR, Appellant

(232 N.W.2d 257)

(File No. 11574. Opinion filed August 22, 1975)

William J. Janklow, Atty. Gen., Galen J. Vaa, Asst. Atty. Gen., Pierre, for plaintiff and respondent.

Ramon A. Roubideaux, Rapid City, for defendant and appellant.

DOYLE, Justice.

This is an appeal from a conviction on two counts of distribution of marijuana in violation of SDCL 39-17-88. We affirm.

The facts in this case, stated in a manner favorable to the verdict, are as follows: On August 14, 1973, a paid informant, Ms. Naomi Church (Church), made contact with the defendant, William James Barr, Jr. The defendant offered to sell Church a quantity of marijuana in the near future. The next day the defendant visited Church in the morning and again in the evening. On the latter visit, the defendant sold Church a "lid" of marijuana (approximately one ounce). The defendant returned the following night, and, pursuant to a conversation of the evening before, sold Church what was said to be slightly less than a pound of marijuana. Expert testimony verified that the substance purchased on both occasions was marijuana.

The defendant raises several arguments which merit consideration here.

I. *Constitutionality of the State Drugs & Substances Control Act.*

The defendant first asserts that the entire State Drugs & Substances Control Act, SDCL 39-17-44 through 39-17-155, is unconstitutional. He bases his contention on this court's holding in *State v. Matteson*, 1973, 87 S.D. 216, 205 N.W.2d 512, that the act was passed with an insufficient title. The defendant contends that the unconstitutionality remains even though the law was subsequently codified. He makes this contention in the face of the language in *Matteson* directly to the contrary:

> "After a statute has been reenacted as part of the Code, 'it is no longer subject to assault because of a claimed defect in the title to the original Act when it was enacted by the legislature'. *Miles Laboratories, Inc. v. Owl Drug Company*, 67 S.D. 523, 295 N.W. 292. Therefore, after Chapter 229, Laws of 1970 became part of our Code its defective title could not be challenged for any criminal offense committed on or after July 1, 1972." 205 N.W.2d at 514.

The defendant urges, however, that Matteson failed to consider the import of SDCL 2-16-15, which states: [1]

---

1. The substance of this provision first appeared in South Dakota law in 1970 in Ch. 17, S.L.1970, and was codified as SDCL 2-16-15. The 1970 provision was amended in 1972 by Ch. 14, S.L.1972, which became effective July 1, 1972. It is the 1972 provision which is considered and interpreted herein. The provision was again amended in 1974 by Ch. 28, S.L.1974.

"No provision of this code as to which any action or proceeding, civil or criminal, has been commenced prior to July 1, 1974, to determine whether or not such provision of this code was constitutionally enacted shall be validated by the enactment of this code."

The defendant contends that this act means that whenever a challenge to a statute is begun before the effective date of codification of the statute, the legislature must begin anew with the statute and reenact it—codification will not, for example, remedy a defect in the title. This interpretation is both strained and unreasonable. It would require us to believe that the legislature wished to require reenactment de novo of a statute with an insufficient title when the title is challenged before codification but not when the challenge is made after codification. The need for legislative action would be made contingent on the timing of actions of unknown litigants, and neither the public nor the accused would be protected by this interpretation. In this case, the legislature enacted a drug law in 1970 and codified it effective July 1, 1972. According to the defendant's theory, the law would be ineffective as to a crime committed on July 2, 1972, if an action had been brought by another on June 30, 1972, even though on July 2, 1972, the day of the hypothetical crime, the codified version was available to inform the public of the law. The defendant's interpretation would invalidate the law as to those who would be informed by the code as to their rights and duties under the law. Thus, this interpretation does not appear to be in accord with the legislative will for two reasons. First, it would make the need for further legislative action contingent on the timing of actions by unknown litigants, an unlikely intent to ascribe to the legislature. Second, it would protect neither the public nor the accused, an even less likely intent. This interpretation may therefore be rejected on the well accepted precedent that this court "may look to the policy underlying a statute and place on it a reasonable interpretation which will best accomplish its purpose rather than defeat it * * *." *Busby v. Shafer*, 1954, 75 S.D. 428, 430, 66 N.W.2d 910, 911. *Rice v. City of Watertown*, 1938, 66 S.D. 221, 281 N.W. 116.

A second interpretation of SDCL 2-16-15 is both reasonable and consistent with the wording of the statute. Codification will

not operate to validate a defect in the original passage of a law with regard to any action, proceeding or criminal offense which had been commenced or committed prior to July 1, 1972, the date of codification. Codification will, however, validate defects· with regard to actions commenced or offenses committed after codification. Thus, those who may be affected by defective titles or other errors in the enacting process are protected. Those who are not affected do not receive the protection. We therefore hold that the operation of SDCL 2-16-15 does not invalidate the South Dakota Drugs & Substances Control Act.

This interpretation may appear to make SDCL 2-16-15 redundant in the light of the constitutional provision against *ex post facto* laws, Art. VI, § 12 of the South Dakota Constitution, but the legislature has often seen fit to express rights already embodied in the State Constitution in its statutes. See, *e. g.*, Art. VI, § 2 of the South Dakota Constitution and SDCL 60-8-3 (right to work); Art. VI, § 5 of the South Dakota Constitution and SDCL 22-28-6 (truth as a defense); Art. VI, § 7 of the South Dakota Constitution and SDCL 23-2-7, 23-2-8, 23-2-9, 23-2-10, 23-2-11 (rights of criminal defendants). Furthermore, this interpretation is consistent with the other language of the legislature pertaining to: retroactivity of the code (SDCL 2-14-21), rights of criminal defendants under previous law (SDCL 2-14-24), and in general to rights vested under the code (SDCL 2-14-27).

Thus, the proper interpretation of SDCL 2-16-15 is harmonious with the clear meaning of previous enactments and with our own decision in *Matteson, supra.*

II. *Defects in Instructions.*

 The defendant next contends that his conviction is improper because the trial court gave an improper reasonable doubt instruction. The defendant did not, however, object to the instruction at the time it was given nor did he offer a substitute instruction. South Dakota statutory law (SDCL 23-42-6(5) and 15-6-51(b) ) and case law (*State v. Larson*, 1919, 41 S.D. 553, 172 N.W. 114; *State v. Halverson*, 1973, 87 S.D. 421, 203 N.W.2d 421) are clear in that this court cannot on appeal con-

sider an objection to an instruction which was not made at the time the instruction was given.[2]

The defendant attempts to avoid the South Dakota law of review, asserting that the court can and should take recognition of "plain error" in the trial court's instructions.[3] The defendant cites several federal cases to substantiate his position. There is, however, no South Dakota precedent which recognizes the "plain error" theory nor does defendant demonstrate how it may be reconciled with statutes which apparently disallow its use; *i. e.*, SDCL 23-42-6(5) and SDCL 15-6-51(b).

The defendant further contends that the trial court erred in failing to give an alibi instruction. However, the defendant did not propose such an instruction nor did he give notice of his intention to rely on alibi as demanded by SDCL 23-37-5 and 23-37-6. He cannot now raise the objection for the same reason that he cannot now complain of failure to charge properly as to "reasonable doubt." *State v. Halverson, supra.*

III. *Insufficiency of Evidence.*

The defendant finally contends that the trial court erred in denying a new trial because the evidence was insufficient to justify the verdict, SDCL 23-50-2. This court has consistently held that the granting of a new trial is within the sound discretion of the trial court and "we may not disturb its determination unless (we are) satisfied that it has abused that discretion." *State v. Kindvall,* 1971, 86 S.D. 91, 99, 191 N.W.2d 289, 294. An examination of the record reveals that the informant testified that the defendant had twice sold her marijuana. The existence of such evidence fully justifies the trial court's refusal to grant a new trial for insufficiency of evidence, and convinces us that the trial court did not abuse its discretion.

---

2. The court does not herein indicate approval of the trial court's instruction. *State v. Kietzke,* 1971, 85 S.D. 502, 186 N.W.2d 551. It recommends consideration, in place of the trial court's instruction, of South Dakota Pattern Jury Instruction, Criminal, 1-6, on reasonable doubt.

3. See in this regard, ABA Standards Relating To Trial by Jury, 4.6(d).

The defendant has raised other contentions which the court has considered and which are without merit. [4]

Affirmed.

WINANS and WOLLMAN and COLER, JJ., concur.

DUNN, C. J., concurs specially.

DUNN, Chief Justice (concurring specially).

I would concur in the results of the decision; however, I feel that *State v. Matteson,* 1973, 87 S.D. 216, 205 N.W.2d 512, at page 514, made it clear that the defective title could not be challenged for any criminal offense committed after July 1, 1972:

> "After a statute has been reenacted as part of the Code, 'it is no longer subject to assault because of a claimed defect in the title to the original Act when it was enacted by the legislature'. (citation omitted) Therefore, after Chapter 229, Laws of 1970 became part of our Code its defective title could not be challenged for any criminal offense committed on or after July 1, 1972."

This crime was committed on August 15, 1973, and the act is not subject to challenge as of that date. I would hold that SDCL 2-16-15 supports this decision *on its face* and does not affect any criminal action commenced after July 1, 1972.

Further, in my opinion, we are in no way punishing conduct which occurred before the act was passed (1970) or before it was codified (July 1, 1972). Thus, a discussion of *ex post facto* laws is not necessary or appropriate.

---

4. We note that counsel represented defendant only for the purpose of this appeal.