STATE, Respondent v. BARR, Appellant

(237 N.W.2d 888)

(File No. 11457. Opinion filed January 15, 1976)

**Laurence J. Zastrow**, Rapid City, for defendant and appellant.

**William J. Janklow**, Atty. Gen., **Galen Vaa**, Asst. Atty. Gen., Pierre, **Michael J. McGreevy**, Warrensburg, Mo., for plaintiff and respondent.

WOLLMAN, Justice.

Defendant was charged with the unlawful distribution of a controlled substance, lysergic acid diethylamide (LSD) in violation of SDCL 39-17-88. He was found guilty by a jury and was sentenced to two years' imprisonment in the state penitentiary.

The state's principal witness, one Naomi Church, also known as Kathy Clark, and as "Fat Kathy," of whom we have written in State v. Barr, 89 S.D. 280, 232 N.W.2d 257, and State v. Murphy, 89 S.D. 486, 234 N.W.2d 54, testified that she had been employed as a narcotics agent by the Pennington County, South Dakota, sheriff's office and the Rapid City, South Dakota, police department on June 1, 1973. She was first introduced to defendant at Sheridan Lake on or about June 24, 1973. She next saw the defendant at the Casino Bar in Rapid City during the evening of June 25, 1973, when she sat at a table with defendant and several other persons. She testified that during the course of the conversation that defendant was having with his several friends at the table she overheard defendant talking to one of the persons at the table about some chocolate mescaline defendant was going to get for him. She heard defendant state that he was going to get

enough chocolate mescaline to, in the witness' words, "* * * turn on the two bands that were playing, White Witch and this Black Oak Arkansas or something * * * And also that he was getting enough to turn on all of his help." Ms. Church also heard defendant talking about white crosses, which is the street name for amphetamines. In her words, "Well, he was trying to tell me how many he had taken that night and they'd been putting them in his drink."

Ms. Church then asked defendant how much chocolate mescaline he was getting and whether he could get her some. After defendant replied in the affirmative, she asked him the price. Defendant replied that, in the witness' words, " * * * it would be about two dollars a hit, and then he asked me how much I wanted and I told him about ten." In response to Ms. Church's inquiry about when he could get the chocolate mescaline for her, defendant " * * * told me that this Mathiason, or whoever he was getting it from from Hill City, had already left to go back, so it was too late to get it then, and he [defendant] said he had to go to Sioux Falls and he'd be back some-time Wednesday or late Wednesday night, so it would be either Wednesday or Thursday that I could get it."

Ms. Church testified that she next saw defendant on June 29, 1973, at approximately 12:35 p.m., when she went to his record store in Rapid City. After purchasing a record from one of defendant's employees, Ms. Church approached defendant. According to her testimony:

"I don't remember if I asked him or he told me that he'd got them, but then I—he asked me how many I wanted and I told him ten, and then I asked him—I asked him the price and he said two dollars, and then I said ten again * * * "

Defendant then went into the back room of his store and returned with a cellophane bag containing some brown pills. Defendant told Ms. Church that there were nine pills in the bag, whereupon she paid him $18. Ms. Church then left the store and shortly thereafter turned the pills over to a deputy sheriff. A chemical

analysis of two of these nine pills revealed that they contained LSD.

Defendant testified that he had seen Ms. Church in the Casino Bar on Monday night, June 25, 1973. He admitted that he had made the statement that he had intended to turn on the members of the band, but testified that he was referring to providing them with liquor and not with drugs. In response to his attorney's question, "Is it pretty much what happened?," referring to Ms. Church's testimony regarding the transaction that occurred in defendant's store on June 29, 1973, defendant replied, "Yes, it is." It was the thrust of defendant's direct testimony that Ms. Church had importuned him to secure drugs for her on numerous occasions, that he had never distributed or sold drugs prior to June 29, 1973, and that the idea of purchasing drugs for and selling them to Ms. Church had originated in her mind rather than his. On cross-examination, however, defendant admitted that he had seen one Fred Monson passing some white crosses to Ms. Church in the Casino Bar on the evening of June 25, that he learned that Fred Monson had put white crosses into his drink that evening, and that the conversation he had had with Ms. Church that evening concerning drugs may have taken place after he had seen Fred Monson passing some white crosses to Ms. Church. Defendant further admitted on cross-examination that he had obtained the drugs in question from one Dave Mathiason on June 28, 1973, after the latter had come into defendant's store and asked defendant whether he knew anyone who wanted to buy some of the chocolate mescaline that Mathiason had. According to defendant, he [defendant] replied, " 'No, I can't think of anybody,' and I went back to my business. Oh, it must not have been more than two minutes and I thought, 'This is a good way to get rid of this girl.' " Defendant then bought all of the alleged mescaline that Mathiason had, consisting of nine pills, which defendant then sold to Ms. Church the following day for $18.

■ Defendant raises three principal questions on appeal. First, he contends that SDCL 39-17-88, which is a part of the state drugs and substances control act, is invalid because of this court's decision in State v. Matteson, 87 S.D. 216, 205 N.W.2d 512, holding Ch. 229, Laws of 1970, unconstitutional because its title

14

was defective under Art. III, § 21 of the South Dakota Constitution. Defendant contends that because Ch. 229, Laws of 1970, the source of SDCL 39-17, was the subject of an action commenced prior to July 1, 1972, to determine the constitutionality of the title of said chapter, that chapter could not have been validly reenacted as part of the Code pursuant to SDCL 2-16-13 because of the provisions of SDCL 2-16-15.

In the case of State v. Barr, supra, we upheld the validity of SDCL 39-17 in the face of a similar challenge. We reaffirm that holding here.

Defendant contends that the trial court erred in giving, over defendant's objection, Instruction No. 10, which informed the jury that:

"The crime of distribution of a controlled substance, as defined by the statutes of this state, does not require that a person distributing a controlled substance know the nature of such substance or that it is a controlled substance. Therefore, if a person does in fact distribute a controlled substance, he has committed the crime, even though he is unaware of the nature of such substance or that it is a controlled substance or is mistaken as to its identity."

We agree with defendant's contention that the court erred in giving this instruction. SDCL 39-17-88 provides that:

"Except as authorized by this chapter, it shall be unlawful for any person to manufacture, distribute, or dispense a substance controlled under this chapter, or to possess with intent to manufacture, distribute, or dispense, a substance controlled under this chapter."

Although it is true that this statute does not specifically provide that knowledge is an element of the offense therein stated, we conclude that knowledge is an element of the offense of unlawful distribution of a controlled substance and that the jury should have been so instructed. We reach this conclusion for

several reasons.

First, we note that courts in other jurisdictions have held that notwithstanding the absence of the word "knowingly" in statutes prohibiting the unlawful possession and sale of narcotic drugs and controlled substances, knowledge is an element of those offenses. See, e.g., Thomas v. State, Alaska, 522 P.2d 528 (sale); People v. Bowens, 229 Cal.App.2d 590, 40 Cal.Rptr. 435 (possession); Rideout v. Superior Court, 67 Cal.2d 471, 62 Cal.Rptr. 581, 432 P.2d 197 (transporting); People v. Rogers, 5 Cal.3d 129, 95 Cal.Rptr. 601, 486 P.2d 129 (transporting); State v. Harris, 159 Conn. 521, 271 A.2d 74 (possession); Medlin v. State, Fla.App., 265 So.2d 515 (unlawful delivery); People v. Truelock, 35 Ill.2d 189, 220 N.E.2d 187 (possession); State v. Reeves, Iowa, 209 N.W.2d 18 (possession); State v. Smith, Iowa, 219 N.W.2d 655 (possession); State v. Florine, Minn., 226 N.W.2d 609 (possession); Applegate v. State, Miss., 301 So.2d 853 (unlawful delivery); Collini v. State, Tex. Cr.App., 487 S.W.2d 132 (possession).

In State v. Kietzke, 85 S.D. 502, 186 N.W.2d 551, this court recognized that under the Uniform Narcotic Drug Act, Ch. 94, Laws of 1968, knowledge of the character of the drug had been held to be an element of the charge of unlawful possession. See Annot., 91 A.L.R.2d 810. South Dakota is among the states that have adopted the Uniform Controlled Substances Act, SDCL 39-17. See 1974 Handbook of the National Commissioners on Uniform State Laws, Table VII, p. 1034. In keeping with the statutory direction that we should interpret and construe a uniform law in such a manner as to effectuate the purpose of making uniform the law of the states which enact it, SDCL 2-14-13, we find persuasive those holdings cited above that have construed the Uniform Narcotic Drug Act and the Uniform Controlled Substances Act, or variations thereof, to require knowledge as an element of the offense of unlawful distribution of a substance such as that involved here.

Second, we note that SDCL 39-17-95 provides that:

"It is unlawful for any person knowingly or intentionally to possess a controlled drug or substance * * *"

The maximum penalty for a violation of this provision is five years' imprisonment or a fine of $5,000, or both such fine and imprisonment, unless for a first or second offense of the illegal possession of marijuana in a quantity of one ounce or less, in which case the maximum penalty is one year's imprisonment in the county jail or a fine of not more than $500, or both such fine and imprisonment. SDCL 39-17-96. See also SDCL 39-17-105 through 39-17-108, all of which state that "it shall be unlawful for any person knowingly or intentionally" to commit the acts therein proscribed. The maximum penalty for a violation of these sections is imprisonment for not more than five years or a fine of not more than $10,000, or both such fine and imprisonment. SDCL 39-17-110 makes it an offense, punishable by a maximum sentence of one year in the county jail and a fine of not more than $500, or both such fine and imprisonment, to knowingly or intentionally inhabit a room wherein any controlled drug or substance is being illegally stored or used. In contrast to the penalties for all of the above cited violations, the maximum sentence for a violation of SDCL 39-17-88 is ten years' imprisonment or a fine of not more than $5,000 or both such fine and imprisonment. SDCL 39-17-90.

Notwithstanding the serious problem of drug abuse that prompted the legislature to adopt SDCL 39-17, it seems to us that it would be anomalous to hold that the legislature intended to require a lesser burden of proof on the part of the state in those offenses carrying the more serious maximum possible penalty than in those cases in which, e.g., the penalty could not exceed one year in the county jail, and, as a matter of common knowledge, often result in the imposition of a 30-day jail sentence, which is then suspended upon certain terms and conditions. Granted, the specific use of the words "knowingly or intentionally" by the legislature in the above enumerated sections of SDCL 39-17 could lend itself to the opposite interpretation, i.e., that the legislature by specifically using those words in the enumerated sections specifically intended to eliminate the requirement of knowledge as an element of the offense of unlawful distribution under SDCL 39-17-88. Were it not for the apparently uniform holdings of other courts—at least the state has called no contrary holding to our attention—that knowledge is an element of the uniformly regarded serious offense of selling or distributing a controlled substance,

whether under the Uniform Narcotic Drug Act or under the Uniform Controlled Substances Act, or a variation of either of those acts, the latter conclusion might logically be reached.

Finally, the state does not contend that knowledge is not an element of the offense described in SDCL 39-17-88. On the contrary, the state argues that the defendant's challenge to the instruction is based on an erroneous interpretation of the instruction. The state contends that the instruction merely states that a person distributing a substance need not know that such an act is illegal, i.e., that it is not necessary for the individual to have knowledge that the substance he is selling is listed in SDCL 39-17 as a controlled substance. In a word, the state contends that this instruction merely states that ignorance of the law does not excuse, and that the instruction cannot be construed to mean that a factual mistake removing criminal intent does not excuse. From this premise, the state submits that we should adopt the definition of "knowingly" found in South Dakota Pattern Jury Instructions (Criminal) 1-11-2, which states that " 'knowingly' imports only a knowledge that the facts exist which bring the act or omission within the provisions of any statute. It does not require knowledge of the unlawfulness of such act or omission." This instruction, of course, is taken verbatim from the definition of "knowingly" set forth in SDCL 22-1-2(1)(b). This argument proves too much, however, for the instruction clearly does not admit of the interpretation suggested by the state, and the definition of "knowingly" set forth in the pattern jury instruction is essentially that definition of knowledge required of one charged under SDCL 39-17-88, i.e., knowledge of that which he is distributing, not knowledge that it is a substance defined as the controlled substance under the provisions of SDCL 39-17.

In holding that SDCL 39-17-88 includes knowledge as an element of the offense of distributing a controlled substance, we do not intend to overrule our earlier decisions that hold that knowledge is not an element of certain crimes. For example, in State v. Klueber, 81 S.D. 223, 132 N.W.2d 847, we held that knowledge that the child was under the age of 15 years is not an element of the offense of indecent molestation of a child as set forth in SDCL 22-22-7. Again, in State v. Fulks, 83 S.D. 433, 160

N.W.2d 418, we held that knowledge that the female was under the age of 18 years is not an element of the offense of second degree rape as set forth in SDCL 22-22-1(1). In State v. Schull, 66 S.D. 102, 279 N.W. 241, this court held that good faith lack of knowledge of a minor's age is not a defense to a charge of selling nonintoxicating beer to a person under the age of 18 years. See also State v. Sasse, 6 S.D. 212, 60 N.W. 853; State v. Dorman, 9 S.D. 528, 70 N.W. 848; State v. Whitman, 52 S.D. 91, 216 N.W. 858. See also United States v. Feola, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541, holding that knowledge that a person assaulted was a federal officer is not an element of the offense of assaulting a federal officer in violation of 18 U.S.C. § 111.

What the Klueber, Fulks and Schull cases, supra, involved, however, were statutes that prohibited certain specified activity that the legislature clearly intended to protect certain classes of persons from, activity which the actor could not in any sense of responsible behavior engage in without perforce being aware of what he was doing, as compared with an act, e.g., the running of a traffic light, that one might commit without any specific awareness at the time. Likewise, under the rationale of these three cases, knowledge of the fact that the person was under the age of 18 years would not be an element of the offense giving rise to enhanced punishment under SDCL 39-17-93 and 39-17-94 for distributing a controlled drug or substance to a person under the age of 18 years.

Although we conclude that the trial court erred in giving the instruction in question, such error does not mandate reversal inasmuch as under the evidence presented it is highly unlikely that the jury would have reached a different result had an instruction setting forth the requirement of knowledge been given. The evidence, including defendant's own testimony, points overwhelmingly to the fact that he had knowledge that the pills that he sold to Ms. Church contained a drug. Indeed, it is not possible to consider that a responsible, unbiased jury could have come to any other conclusion but that the defendant knew of this fact. That being the case, the outcome would not have been any

different had Instruction No. 10 not been given.[1] As was stated by the Illinois Supreme Court in People v. Truelock, 35 Ill.2d 189, 220 N.E.2d 187:

> "We agree that the trial court erred in giving the objected to instruction and form of jury verdict in this case. Without proof that a defendant has knowingly possessed a narcotic drug, a defendant cannot be convicted of the crime of unlawful possession of narcotic drugs, and the jury in this case should have been so instructed. However, we do not think that the error in this case requires reversal. 'Even though error may have been committed in giving or refusing instructions it will not always justify reversal when the evidence of defendant's guilt is so clear and convincing that the jury could not reasonably have found him not guilty.' (citation omitted) In the present case, the evidence of the defendant's knowledge of the presence of narcotics is clear and convincing. We do not think that a jury could reasonably have found the defendant not guilty in this case, and therefore, reversal is not justified." 35 Ill.2d at 192, 220 N.E.2d at 190.

See also, Thomas v. State, Alaska, 522 P.2d 528, where because the inference was compelling that the defendant knew what he was selling and there was no possibility that the jury's verdict would have been different if an instruction on knowledge had been given, the court held that there was no plain error and therefore did not reverse the conviction. Accord, People v. Bowens, 229 Cal.App.2d 590, 40 Cal.Rptr. 435.

We have not overlooked defendant's argument that because the evidence indicated that the substance that he sold

---

1. Defendant did not offer a proposed instruction on the element of knowledge. Had his objection to Instruction No. 10 carried the day, he would hardly have been in any better position inasmuch as the question of knowledge would have as effectively been removed from the consideration of the jury as it was under the objected-to instruction. Having failed to request an instruction on the element of knowledge, defendant will not be heard to claim that the trial court erred in not giving such an instruction. SDCL 15-6-51(a); State v. Barr, supra; State v. Greene, 86 S.D. 177, 192 N.W.2d 712; State v. Nelson, 80 S.D. 574, 129 N.W.2d 54; State v. Vierck, 23 S.D. 166, 120 N.W. 1098.

was mescaline rather than LSD the conviction must be set aside. The fact that defendant thought that the substance was mescaline, if in fact that is what he thought, is not fatal to his conviction. Knowledge that it was a hallucinogenic substance was sufficient to meet the requirement of knowledge that we have held to be an element of SDCL 39-17-88. Both mescaline and LSD are Schedule I controlled substances under SDCL 39-17-57 and the maximum penalty for the unlawful distribution of either is the same. SDCL 39-17-90. This is not a case in which defendant can complain that he was misled about the nature of the charges against him. The evidence is clear that defendant intended to distribute a controlled substance; he cannot successfully contend that he committed the act giving rise to the charge against him under circumstances that would constitute such a mistake of fact as to disprove any criminal intent. SDCL 22-3-1(5).[2]

▮ Finally, defendant contends that the trial court should have granted his motion for a directed verdict of acquittal because the state's evidence was insufficient to overcome the defense of entrapment. We have set forth in greater than usual detail the evidence in this case because we think that it carries with it the refutation of defendant's contention. With the trial court's permission, defendant exercised great latitude in cross-examining Ms. Church with regard to her background, prior experience and personal history, including questions regarding tattoos on certain portions of her body. That done, defendant and his witnesses proceeded to corroborate by their own testimony almost all of Ms. Church's testimony regarding dates, places, conversations, persons, etc. In addition, the court on its own motion instructed the jury that:

2. Had an instruction on knowledge been given, the jury might very well have reasonably inferred from all the facts and circumstances that defendant in fact knew that the pills contained LSD. See United States v. Moser, 7 Cir., 509 F.2d 1089, for a well reasoned analysis of the legitimate inferences that can be drawn by juries in narcotics cases involving a variance between the charge and the proof. See also United States v. Joly, 2 Cir., 493 F.2d 672, and United States v. Olivares-Vega, 2 Cir., 495 F.2d 827, which upheld the giving of a "conscious avoidance" instruction in circumstances where the jury might find that the defendant deliberately chose not to learn the nature of the substance in question in order to be able to assert his ignorance in the event he was discovered with the substance in his possession. Instructions based upon the rationale expressed in these three cases should be adequate to meet the issues raised in most "mistaken identity" narcotics cases.

"The testimony of an informer who acts for reasons of personal profit does not stand on the same footing as the testimony of an ordinary witness. The jury must evaluate the informer's testimony with great care to determine whether it has been affected by her special motivations."

Moreover, the court fully and fairly instructed the jury on the defense of entrapment. The jury obviously put credence in Ms. Church's testimony and concluded that the intent to engage in the distribution of the controlled substance in question had originated in the mind of the defendant and that Ms. Church had merely afforded defendant an opportunity for the commission of the offense. Such a conclusion could properly have been drawn from the evidence taken as a whole, and thus the trial court correctly refused to rule as a matter of law that defendant had been the victim of entrapment. State v. Shearer, 86 S.D. 711, 201 N.W.2d 180; State v. Williams, 84 S.D. 547, 173 N.W.2d 889.

The conviction is affirmed.

DOYLE and COLER, JJ., concur.

DUNN, C. J., and WINANS, J., concur specially.

DUNN, Chief Justice (concurring specially).

I would concur in affirming the conviction. Instruction 10, which states that knowledge of a controlled substance was not an element of the crime, was error and would be grounds for reversal except for the fact that defendant's knowledge or lack of knowledge that he was distributing a controlled drug was not an issue or a defense in the case. The only defense submitted to the jury was whether the defendant was entrapped by Naomi Church. The defendant testified on cross-examination as follows:

"Q   Did you obtain them (controlled substances) in Rapid City?

"A   I did.

"Q   Were they obtained in your store?

"A   They were.

"Q   Now, who did you obtain them from?

"A   Dave Mathiason.

"Q   Is he from Hill City?

"A   He's from anywhere. I don't know.

"Q   How do you happen to know him?

"A   An acquaintance.

"Q   How did you happen to obtain them from him as differentiated from somebody else?

"A   He walked in my store, said, 'Hi.' I said, 'Hi.' We were busy, and he kind of pulled me off a little bit like a lot of these people do and says, 'You know anybody that wants to buy some of this chocolate mescaline I have,' and I said, 'No, I can't think of anybody,' and I went back to my business. Oh, it must not have been more than two minutes and I thought, 'This is a good way to get rid of this girl.'

"Q   Just a moment. At this time was Kathy Clark or Naomi Church, the same person, was she in the store then?

"A   No, not at this time. This was early morning.

"Q   Of June 28th?

"A   Right.

"Q   So then what happened?

"A   So then I bought them from him.

"Q How many did you buy?

"A She'd asked me for ten, so I told him that I wanted ten and he said, 'I don't have that many.' So I bought what he had.

"Q Which was nine?

"A I don't know. I know it was more than two and more than three and I know it was more than seven, but whether it was nine or ten or eight I don't know.

"Q Did you sell all that you obtained to Naomi Church?

"A Sure did."

Thus, defendant's own testimony reveals that he knew he was buying a controlled substance from Dave Mathiason and that he was selling a controlled substance to Naomi Church. His only error is that he thought the controlled substance was mescaline instead of LSD. Thus instruction 10 could not be prejudicial to his defense.

I am authorized to state that Justice WINANS joins in this special concurrence.