PLANNED PARENTHOOD OF MINNESOTA/SOUTH DAKOTA and Peter D'Ascoli, M.D., Plaintiffs,

v.

William J. JANKLOW, Governor, and Mark Barnett, Attorney General, in their official capacities, Defendants.

No. CIV. 02–4009–KES.

United States District Court, D. South Dakota, Southern Division.

Aug. 14, 2002.

constituted substantial gainful activity "despite being part-time in nature." (Tr. at 27.)

Dara Klassel, Roger K. Evans, Carrie Y. Flaxman, Planned Parenthood Federation of America, Legal Action for Reproductive Rights, New York City, Rhonda C. Lockwood, Kenneth M. Tschetter, Lockwood Law Office, Sioux Falls, SD, Helene T. Krasnoff, Planned Parenthood Federation of America, Washington, D.C., for plaintiffs.

John P. Guhin, Frank E. Geaghan, Patricia J. Froning, Attorney General's Office, Pierre, SD, for defendant.

## MEMORANDUM OPINION AND ORDER

SCHREIER, District Judge.

[¶ 1] Plaintiffs, Planned Parenthood of Minnesota/South Dakota and Peter D. Ascoli, M.D., bring this action seeking declaratory and injunctive relief. Plaintiffs seek to declare two provisions of South Dakota's abortion laws unconstitutional on their face: South Dakota Codified Laws §§ 22–17–5 and 34–23A–4. Defendants, Governor William J. Janklow and Attorney General Mark Barnett (State), in their official capacities, move to dismiss plaintiffs' claim with regard to SDCL 34–23A–4 and SDCL 32–23A–6 [1] on the grounds that plaintiffs lack standing to pursue this case and that the case is not ripe for adjudication. If plaintiffs do have standing, then the State moves this court to certify the question of whether SDCL 22–17–5 contains a scienter requirement to the South Dakota Supreme Court. Plaintiffs move for summary judgment.

## FACTS

[¶ 2] The Planned Parenthood clinic in Sioux Falls is South Dakota's only provider of abortion services. Sioux Valley Hospital, also in Sioux Falls, performs abortions, but only when a woman's life or health is threatened or if there is evidence of a lethal fetal anomaly. Sioux Valley performed approximately twenty abortions in the last four years. The abortion services provided at Sioux Valley are significantly more expensive than services provided at the Planned Parenthood clinic.

[¶ 3] Planned Parenthood schedules abortions for women when it is believed that the pregnancy will be no more advanced than thirteen weeks as measured from the first day of the last menstrual period. If the performing physician believes that a woman might be one day beyond South Dakota's statutory deadline, she is turned away. Women often travel up to four hundred miles to receive an abortion at the Planned Parenthood clinic.

[¶ 4] In its first amended complaint, plaintiffs seek to enjoin the enforcement of two provisions of South Dakota law: (1) SDCL 34–23A–4, which mandates that abortions performed following the twelfth week of pregnancy be performed in a hospital; and (2) SDCL 22–17–5, which provides that "[a]ny person who performs, procures or advises an abortion other than authorized by chapter 34–23A is guilty of a Class 6 felony." Plaintiffs seek declaratory and injunctive relief against the challenged provisions alleging they violate the privacy and due process rights of plaintiffs and their patients as guaranteed by the Fourteenth Amendment to the United States Constitution.

## DISCUSSION

[¶ 5]I. Standing

[¶ 6] Standing is the constitutional requirement that a plaintiff allege a justiciable "case" or "controversy" under Article III of the United States Constitution. See Whitmore v. Arkansas, 495 U.S. 149,

---

**1.** Although the State references SDCL 32–23A–6 in their motion to dismiss, plaintiffs do not challenge the constitutionality of SDCL 32–23A–6 in their first amended complaint.

155, 110 S.Ct. 1717, 1722, 109 L.Ed.2d 135 (1990). The constitutional minimum requirement for standing contains three elements. First, plaintiffs must show an "injury in fact" which is concrete and particularized, and not hypothetical. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Second, a causal connection must exist between the injury and the pertinent conduct. *See id.* Third, it must be likely that the injury will be redressed by a favorable decision. *See id.* at 561, 112 S.Ct. 2130. Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing these elements. *See FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 608, 107 L.Ed.2d 603 (1990).

■ [¶ 7] Plaintiffs must establish "an injury in fact" by alleging "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). Presently, Planned Parenthood schedules abortion for patients when it is believed, at the time the appointment is scheduled, that the pregnancy will be no more advanced than thirteen weeks past the first day of a woman's last menstrual period (LMP). At the time of the scheduled abortion, however, physicians occasionally determine that the gestation age is greater than 13.6 weeks LMP. Planned Parenthood's practice at its Minnesota clinics is to perform the abortion if the pregnancy is slightly beyond 13.6 weeks LMP if the physician believes it is in the patient's best interest to perform the procedure and it

can be performed safely. Planned Parenthood alleges that it would like to implement in South Dakota the same practice it has in Minnesota and perform abortions past the statutory limit proscribed by SDCL 34–23A–4 [2].

[¶ 8] The State argues that this allegation is insufficient to establish jurisdiction because it is unlikely that any woman seeking an abortion beyond 13.6 weeks LMP will ever appear at the Sioux Falls Clinic. Planned Parenthood has, however, established standing under *Babbitt* by alleging an intention to engage in conduct proscribed by SDCL 34–23A–4. Moreover, the evidence supports Planned Parenthood's assertion that its conflict with SDCL 34–23A–4 is more than hypothetical. Planned Parenthood has performed abortions in Minnesota upon women with gestational ages beyond 13.6 weeks LMP, and there is no evidence that women with similar situations do not exist in South Dakota. In fact, at least 74 women have visited the Sioux Falls clinic seeking abortion services, but have been turned away because of their gestational age. Thus, the evidence in the record demonstrates that Planned Parenthood would likely be performing abortions past 13.6 weeks LMP in South Dakota were it not for SDCL 34–23A–4.

[¶ 9] The State also argues that there is no injury in fact because plaintiffs' injuries are not concrete. "Plaintiffs must demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660,

---

2. 34–23A–4 provides: "An abortion may be performed following the twelfth week of pregnancy and through the twenty-fourth week of pregnancy by a physician only in a hospital licensed under the provisions of chapter 34–12 or in a hospital operated by the United States, this state, or any department, agency or political subdivision of either or in the case of hospital facilities not being available, in the licensed physician's medical clinic or office of practice subject to the requirements of § 34–23A–6."

75 L.Ed.2d 675 (1983) (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)).

[¶ 10] Dr. D'Ascoli faces criminal liability for violating SDCL 34–23A–4; therefore, his relationship to the state is classically adverse and he has standing to seek pre-enforcement review of his constitutional claim. *See Doe v. Bolton,* 410 U.S. 179, 188, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). Planned Parenthood, as the owner of a medical clinic that provides abortions, has similar standing. *See Planned Parenthood of Wisconsin v. Doyle,* 162 F.3d 463, 465 (7th Cir.1998). Physicians also have standing to assert the rights of their patients. *See Singleton v. Wulff,* 428 U.S. 106, 115, 96 S.Ct. 2868, 2875, 49 L.Ed.2d 826 (1976). The closeness of the relationship between doctor-patient is patent because a woman cannot safely obtain an abortion without the aid of a physician. *See id.* at 117, 96 S.Ct. 2868. "Moreover, the constitutionally protected decision is one in which the physician is intimately involved." *Id.* As a result, the Supreme Court held "that it generally is appropriate to allow a physician to assert the rights of women patients as against governmental interference with the abortion decision" and the Supreme Court declined to restrict this holding to a purely criminal context. *Id.* at 118, 96 S.Ct. 2868. Plaintiffs, therefore, have established standing with respect to both statutes.

[¶ 11] The State claims that the issues are not concrete because plaintiffs have not pled a precise gestational age at which abortions will no longer be performed. Plaintiffs are not obligated to offer such details. Plaintiffs must only allege a specific intent to pursue conduct that violates the challenged statute. *See Arkansas Right to Life State Political Action Comm. v. Butler,* 146 F.3d 558 (8th Cir.1998).

[¶ 12] The State does not contest the second or third elements required to es-

tablish standing. There is sufficient evidence in the record to establish a causal connection between the injury alleged and the pertinent conduct, and that injury will be redressed by a favorable decision. Consequently, plaintiffs have established standing.

[¶ 13]**II. Ripeness**

[¶ 14] Ripeness must also be established to allow the court to exercise subject matter jurisdiction. *See Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), *overruled on other grounds by Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Ripeness requires an evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *See Abbott* at 149, 87 S.Ct. 1507.

[¶ 15] The State argues that this matter is not ripe because it is based on contingent events that may never occur. *See Nebraska Pub. Power Dist. v. MidAmerican Energy Co.,* 234 F.3d 1032, 1038 (8th Cir.2000). Specifically, the State contends it is not likely that a woman will appear at the Sioux Falls clinic for an abortion 13.6 weeks LMP. Plaintiffs, however, are placed in the dilemma of complying with the statute or risking criminal penalties. This case is ripe because, as in *Abbott,* "[t]o require [plaintiffs] to challenge these [statutes] only as a defense to an action brought by the Government might harm them severely and unnecessarily." *Abbott,* 387 U.S. at 153, 87 S.Ct. 1507. The Eighth Circuit has also held that a party need not wait for actual harm to occur for a claim to be ripe. *See Nebraska Pub. Power Dist.,* 234 F.3d at 1038.

[¶ 16] Furthermore, plaintiffs have not received assurances that the hospitalization requirement will not be enforced. *See Planned Parenthood of Central New*

*Jersey v. Farmer,* 220 F.3d 127, 148 (3d Cir.2000). In fact, in November of 2000, after a site visit at the Planned Parenthood clinic in Sioux Falls, the South Dakota Department of Health issued a compliance report which cited Planned Parenthood for violating the hospitalization requirement. Planned Parenthood responded that it believed the requirement was unconstitutional. In December of 2001, the South Dakota Department of Health conducted another site visit and again issued a deficiency report. This report specifically referenced SDCL 34–23A–4 and found that Planned Parenthood "failed to ensure that all induced abortions performed in 2000 fell within the first twelve weeks of pregnancy." Six violations were identified. The State ordered Planned Parenthood to submit a proposed "Plan of Correction" by no later than January 11, 2002. No plan was submitted. Plaintiffs filed this action on January 22, 2002. The potential for harm is evident as plaintiffs must choose whether to risk criminal liability or deny women services. Consequently, this action is ripe and the State's motion to dismiss is denied.

[¶ 17]**III. Certification**

■ [¶ 18] Certification is appropriate when the state court's construction of an uncertain state law could make the resolution of a federal constitutional question moot. *See Planned Parenthood, Sioux Falls Clinic v. Miller,* 63 F.3d 1452, 1462 (8th Cir.1995). Certification is not required, however, when the statute is "neither ambiguous nor obviously susceptible of a limiting construction." *City of Houston, Texas v. Hill,* 482 U.S. 451, 471, 107 S.Ct. 2502, 2514, 96 L.Ed.2d 398 (1987). The mere opportunity to avoid deciding a constitutional question does not alone justify abstention. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 815 n. 21, 96 S.Ct. 1236, 1245 n. 21, 47 L.Ed.2d 483 (1976).

[¶ 19] The issue before this court, therefore, is whether SDCL 22–17–5 is unclear or ambiguous. SDCL 22–17–5 provides that "[a]ny person who performs, procures or advises an abortion other than authorized by chapter 34–23A is guilty of a Class 6 felony." The language of this statute is clear and unambiguous, and the court is obligated to declare the plain meaning of the statute. *See U.S. West Communications, Inc. v. Public Util. Comm'n,* 505 N.W.2d 115, 123 (S.D.1993). Based on the plain meaning of the language used in SDCL 22–17–5, scienter is not a required element.

[¶ 20] A scienter element, however, may be read into a statute that completely lacks such an element under certain circumstances. *See State v. Stone,* 467 N.W.2d 905 (S.D.1991); *State v. Barr,* 90 S.D. 9, 237 N.W.2d 888 (1976). In *Miller,* the Eighth Circuit recognized that "[t]he South Dakota Supreme Court has established a test for when it will read a scienter requirement into a statute that completely lacks one." *Miller,* 63 F.3d at 1464 (citing *Stone,* 467 N.W.2d at 906 and *Barr,* 237 N.W.2d at 891–93). Under the test recognized in *Miller,* the court is to consider what courts in other jurisdictions have done with similar statutes, whether lesser crimes include a scienter element, and finally, whether the State contends there is a scienter element in the statute. *See id.*

[¶ 21] The first step in the *Barr* analysis is to consider what courts in other states have done with similar statutes. *See Miller,* 63 F.3d at 1464. The State has not identified any cases in other jurisdictions in which laws similar to the two statutes in question here have been held to contain scienter requirements. The State contends that South Dakota's abortion laws can be construed to contain a scienter requirement as the Massachusetts Su-

preme Court did in *Baird v. Attorney General*, 371 Mass. 741, 360 N.E.2d 288 (1977). In *Baird*, the Massachusetts Supreme Court held that a physician could claim a good-faith, reasonable mistake as to a minor's age if prosecuted for performing an abortion without the consent of the minor's parents, even though the statute did not contain a scienter element. *See id.* at 302. The Massachusetts Supreme Court relied on a scienter element found in the state's general law on parental consent for medical care, which permitted a physician to assert a good-faith mistake as to the minor's age as a defense. *See id.* South Dakota, however, does not have a general law on physician liability or on the performance of abortions that would override SDCL 22–17–5. Consequently, no body of law exists to persuade the South Dakota Supreme Court to imply a scienter element in SDCL 22–17–5.

■ [¶ 22] The court must next determine if crimes with lesser penalties contain scienter provisions. *See Miller*, 63 F.3d at 1464. The State argues that because SDCL 34–23A–10.2 and SDCL 34–23A–42 require knowledge or recklessness to prove a misdemeanor violation of the abortion law, it would be anomalous to find that SDCL 22–17–5, which carries felony penalties, does not require knowledge or recklessness. The legislature, however, enacted the penalty provisions of SDCL 34–23A–10.2 and SDCL 34–23A–42 twenty years after the enactment of the penalty provisions found in SDCL 22–17–5. The legislature's actions, twenty years after the fact, shed little light on the interpretation of SDCL 22–17–5. Furthermore, the leg-

islature could have amended SDCL 22–17–5 in 1997 when it amended SDCL 34–23A–10.2 by adding a scienter element in order to cure the constitutional problems found by the Eighth Circuit in *Miller.* The court must assume the legislature considered previously enacted statutes on the same subject. *See Freeman Cmty. Hosp. & Nursing Home v. Hutchinson County*, 633 N.W.2d 179, 184 (S.D.2001). The legislature's enumeration of scienter elements in related crimes leads to the conclusion that it intentionally omitted scienter from the statute under consideration. *See Miller*, 63 F.3d at 1465 (citing *Barr*, 237 N.W.2d at 892). It is unlikely that the South Dakota Supreme Court would find that SDCL 34–23A–10.2 and SDCL 34–23A–42 provide evidence of the legislature's intent to require a scienter provision for SDCL 22–17–5.

[¶ 23] The third step of the *Barr* analysis considers the position of the State as to whether scienter is an element. The State contends that there is a scienter requirement in the statute. That is improbable, given the plain language of the statute. *See Miller*, 63 F.3d at 1464. The opinion of the Attorney General is not enough to justify implying a scienter element where no such element exists in the text of the statute. *See id.* Under the *Miller* test, a scienter requirement would not be read into the statute.

[¶ 24] The State argues that the *Barr* test is not applicable because the statutory framework surrounding SDCL 22–17–5 implies a scienter element. Specifically, the State cites SDCL 34–23A–1(6)[3] and SDCL 34–23A–3[4] as evidence that the leg-

---

**3.** Probable gestational age of the unborn child is defined in SDCL 34–23A–1(6) as "what, in the judgment of the physician, will with reasonable probability be the gestational age of the unborn child at the time the abortion is planned to be performed."

**4.** SDCL 34–23A–3 provides that "[a]n abortion may be performed by a physician during the first twelve weeks of pregnancy. The abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician during the first twelve weeks of pregnancy."

islature did not intend to make SDCL 22–17–5 a strict liability offense. SDCL 34–23A–1(6) defines the term "[p]robable gestational age of the unborn child" to mean the gestational age as determined by the physician's judgment. The term "probable gestational age," is, however, only referenced in SDCL 34–23A–10.1, a statute that addresses informed consent. The term "probable gestational age" does not appear in SDCL 22–17–5 or in SDCL 34–23A–4, the statutes challenged by plaintiffs. "The intent of a statute must be determined from what the legislature said, rather than what this court thinks the legislature should have said, and this determination must be confined to the plain, ordinary meaning of the language used by the legislature." *Hagemann v. NJS Eng'g, Inc.*, 632 N.W.2d 840, 843 (S.D.2001) (quoting *M.B. v. Konenkamp*, 523 N.W.2d 94, 97 (S.D.1994)).

[¶ 25] While the State argues that "probable gestational age" is an implied term in SDCL 34–23A–4, that is not the plain, ordinary meaning of the language in the statute. SDCL 34–23A–3 specifically leaves the abortion decision during the first twelve weeks of pregnancy to the "medical judgment" of a pregnant woman's attending physician. The legislature did not use similar language in SDCL 34–23A–4 for abortions performed during the second twelve weeks. "The legislative intent is determined from what the legislature said, rather than from what we or others think it should have said." *Hagemann*, 632 N.W.2d at 843. Furthermore, SDCL 34–23A–4 does not state that a physician may rely on his judgment to determine the duration of the pregnancy. This conclusion is supported by SDCL 34–23A–5[5], which limits the scope of a physician's

judgment to determining whether an abortion is necessary to preserve the life or health of the mother. If the legislature had intended a physician to exercise his "medical judgment" to determine the duration of the pregnancy, for purposes of SDCL 34–23A–5 and SDCL 34–23A–4, the legislature would have expressed that intention in the language used in the statutes.

[¶ 26] The State next argues that this court cannot rely on the *Barr* test to determine whether the South Dakota Supreme Court would imply a scienter element in SDCL 22–17–5. The State contends that the most recent decisions of the South Dakota Supreme Court indicate that the *Barr* test has been abandoned. In support of its position, the State cites *State v. Springer–Ertl*, 610 N.W.2d 768 (S.D.2000), *State v. Hy Vee Food Stores, Inc.*, 533 N.W.2d 147 (S.D. 1995), and *State v. Teutsch*, 80 S.D. 462, 126 N.W.2d 112, 114 (1964).

[¶ 27] The cases cited by the State, however, do not support the proposition that the *Barr* test has been abandoned. In *Hy Vee*, the South Dakota Supreme Court did not apply the *Barr* test because it found that the pertinent statute was constitutional. *See Hy Vee*, 533 N.W.2d at 149–50. The *Barr* test was only applied after the South Dakota Supreme Court determined a need to avoid a constitutional problem. In *Teutsch*, the South Dakota Supreme Court read an intent requirement into the crime of embezzlement because it is the type of crime that traditionally requires an intent to defraud. *See Teutsch*, 126 N.W.2d at 114. Performing an abortion outside of a hospital is not a traditional crime, and thus the *Teutsch* analysis is not

---

**5.** SDCL 34–23A–5 provides: "An abortion may be performed following the twenty-fourth week of pregnancy by a physician only in a hospital authorized under § 34–23A–4 and

only if there is appropriate and reasonable medical judgment that performance of an abortion is necessary to preserve the life or health of the mother."

applicable. In *Springer–Ertl,* which defendants admit is not on point, the only question before the court was whether the defendant in a jury tampering case was entitled to a jury instruction distinguishing between the crime of attempting to influence a juror and the right to free expression under the First Amendment. *See Springer–Ertl,* 610 N.W.2d at 777–78. The court did not address the issue of what standard should be applied to determine whether a scienter element should be implied. Thus, *Springer–Ertl* did not abandon the *Barr* test because the issue was not before the court. A review of the cases cited by the State does not support the proposition that the South Dakota Supreme Court has abandoned the *Barr* test.

■ [¶ 28] The South Dakota Supreme Court would not read an implied scienter element into SDCL 22–17–5. The plain language of the statute is not ambiguous or unclear, and thus there is no reason to certify this issue.

### [¶ 29]IV. Summary Judgment

### [¶ 30]A. Summary Judgment Standard

[¶ 31] Under Rule 56(c) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if it can show that "there is no genuine issue as to any material fact and that [the movant] is entitled to judgment as a matter of law." *Lambert v. City of Dumas,* 187 F.3d 931, 934 (8th Cir.1999). In determining whether summary judgment should issue, the court must view the evidence and inferences reasonably drawn therefrom "in the light most favorable to the nonmoving party." *Id.* (citing *Enterprise Bank v. Magna Bank of Missouri,* 92 F.3d 743, 747 (8th Cir.1996); *Adkison v. G.D. Searle & Co.,* 971 F.2d 132, 134 (8th Cir.1992)). The burden is on the moving party to establish the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); *see*

*also Enterprise Bank,* 92 F.3d at 747; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "As to materiality ... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Once this burden has been met, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts that create a genuine issue for trial. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

### [¶ 32]B. Undue–Burden Test

■ [¶ 33] Plaintiffs challenge the facial constitutionality of abortion laws that apply to women seeking abortions following the twelfth week of pregnancy and through the twenty-fourth week of pregnancy. The State contends that the standard for such a challenge is the test set out in *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), under which "the challenger must establish that no set of circumstances exists under which the Act would be valid." *Salerno,* 481 U.S. at 745, 107 S.Ct. 2095. Plaintiffs contend that the standard is whether the state regulation imposes an undue burden on a woman's ability to make the decision to terminate her pregnancy as was articulated in *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 874, 112 S.Ct. 2791, 2819, 120 L.Ed.2d 674 (1992). The Eighth Circuit ruled against the State on this exact argument in *Miller,* 63 F.3d at 1458. In *Miller* the court held:

We choose to follow what the Supreme Court actually did—rather than what it failed to say—and apply the undue-burden test. It is true that the Court did not expressly reject *Salerno's*

application in abortion cases, but it is equally true that the Court did not apply *Salerno* in *Casey*. If it had, it would have had to uphold Pennsylvania's spousal-notification law, because that law imposed "almost no burden at all for the vast majority of women seeking abortions." *Casey*, 505 U.S. at 893–94, 112 S.Ct. at 2829. Instead, the Court held that "[t]he proper focus of constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant." *Id.* at 893–94, 112 S.Ct. at 2829. If the law will operate as a substantial obstacle to a woman's choice to undergo an abortion "in a large fraction of the cases in which [it] is relevant, ... [i]t is an undue burden, and therefore invalid." *Id.* at 895–97, 112, S.Ct. at 2830.

*Id.* This court is bound by the precedent handed down by a panel of the Eighth Circuit. Only the Eighth Circuit sitting en banc may overrule the *Miller* panel decision. *See Helseth v. Burch*, 258 F.3d 867, 869 (8th Cir.2001). This court will therefore apply the *Casey* undue-burden standard to determine if SDCL 34–23A–4 is constitutional on its face.

[¶ 34]C. **Constitutionality of SDCL 34–23A–4**

[¶ 35] SDCL 34–23A–4 mandates that abortions following the twelfth week of pregnancy be performed in a hospital rather than an outpatient clinic. The constitutionality of the hospitalization requirement for second trimester abortions was examined by the United States Supreme Court in *City of Akron v. Akron Center for Reproductive Health, Inc.*, 462 U.S. 416, 438–39, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983) and by the United States Court of Appeals for the Eighth Circuit in *Reproductive Health Service v. Webster*, 851 F.2d 1071 (8th Cir.1988). In *Akron*, the Supreme Court found an ordinance requiring hospitalization for women seeking second-tri-

mester abortions unconstitutional. *See Akron*, 462 U.S. at 438–39, 103 S.Ct. 2481. The City of Akron argued, just as the State argues here, that the hospitalization requirement is constitutional because the state has a legitimate interest in protecting a woman's health. The Supreme Court, however, determined that present medical knowledge "convincingly undercuts" the justification for requiring all second-trimester abortions be performed in a hospital. *Id.* at 437, 103 S.Ct. 2481. Specifically, the Court pointed to the guidelines of the American College of Obstetricians and Gynecologists and the American Public Health Association. Both major health organizations found that early second trimester abortions are provided safely outside of hospitals. *See id.* at 435–36, 103 S.Ct. 2481.

[¶ 36] The Eighth Circuit relied on *Akron* when it found unconstitutional a Missouri statute that required hospitalization for abortions performed at sixteen weeks gestation or later. *See Webster*, 851 F.2d at 1074. The Eighth Circuit determined that the hospitalization requirement was not reasonably related to the state's interest in protecting a woman's health. In fact, the court found "the prevailing medical practice" was for abortions performed at sixteen to eighteen weeks gestation "to be performed outside the hospital setting." *Id.* at 1074 n. 4.

[¶ 37] The State contends that *Akron* and *Webster* were overruled by *Casey*. *Casey*, however, explicitly overruled *Akron* only to the extent that *Akron* found a constitutional violation when the state "requires ... the giving of truthful, nonmisleading information about the nature of the procedure, the attendant health risks and those of childbirth, and the 'probable gestational age' of the fetus." *Casey*, 505 U.S. at 882, 112 S.Ct. 2791. *Casey* found this to be "inconsistent with *Roe's* acknowledgment of an important [state] interest in

potential life, ..." *Id.* *Casey* did not override the portion of the *Akron* decision that dealt with the second trimester hospitalization requirement, which, like SDCL 34–23A–4, involved the state's interest in maternal health rather than its interest in potential life. In fact, *Casey* specifically reaffirmed this portion of *Akron.* *See Casey,* 505 U.S. at 870, 112 S.Ct. 2791.

■ [¶ 38] The State also claims that *Akron* and *Webster* should not be followed because they do not apply the *Casey* undue-burden analysis. The undue-burden analysis, however, does not change the precedential value of *Akron* and *Webster.* *Akron* found unconstitutional an ordinance that required all abortions performed after the first trimester of pregnancy to be performed in a hospital because it "imposed a heavy, and unnecessary, burden" on a woman's access to abortion facilities. *See Akron,* 462 U.S. at 436, 103 S.Ct. 2481. The Eighth Circuit, in *Webster,* found unconstitutional a Missouri statute that mandated that every abortion performed after sixteen weeks of gestational age be performed in a hospital. *Webster* held that the hospitalization requirement significantly impaired the right to an abortion, and was not "reasonably related to the state's interest in maternal health." *See Webster,* 851 F.2d at 1074. Thus, *Akron* and *Webster* applied a virtually identical standard that *Casey* later adopted. Thus, under the *Casey* undue-burden standard, SDCL 34–23A–4 is an undue burden and an unnecessary infringement upon a woman's constitutional right to an abortion.

[¶ 39] The State contends that SDCL 34–23A–4 is less burdensome than the statute struck down in *Akron* because SDCL 34–23A–4, which incorporates by reference SDCL 34–23A–6 [6], provides that when hospital facilities are not available an abortion may be performed in a clinic that has ready access to a blood supply. The State contends this constitutes "a hospitalization requirement with an alternative clinic-blood supply requirement." This is a misinterpretation of the statute. SDCL 34–23A–4 is a hospitalization requirement. It allows clinic facilities to be used only when hospital facilities are not available. The State has never argued that hospital facilities are unavailable, and there is no evidence in the record to support such an assertion. Because hospital facilities are available in South Dakota, the alternative for an abortion in a clinic that has access to a blood supply is not an option. As a result, the hospitalization requirement under SDCL 34–23A–4 is not less burdensome than the statute struck down in *Akron.*

[¶ 40] Both the State and plaintiffs agree the "blood bank" requirement cannot be severed from the hospitalization requirement. When the text of the statute indicates that the two parts of the statute are so intertwined and dependent on each other, then the entire statute must fail. *See In re Certification of Questions of Law,* 544 N.W.2d 183, 203 (S.D.1996); *State ex rel. Mills v. Wilder,* 73 S.D. 330, 42 N.W.2d 891, 897 (1950). Because the blood bank requirement is intertwined with the hospitalization requirement, the court finds all of SDCL 34–23A–4 to be unconstitutional.

[¶ 41]**D. Constitutionality of SDCL 22–17–5**

■ [¶ 42] Plaintiffs also seek summary judgment on their claim that SDCL 22–17–

---

**6.** SDCL 34–23A–6 provides: "Any abortion performed under the provisions of § 34–23A–4 or 34–23A–5 shall be performed only in a facility which has a blood bank or a sufficient supply of blood immediately available and such facilities shall provide for Rhesus factor (Rh) testing and Rho-gam, Gammulin or any other product of equivalency inoculations shall be required for women undergoing abortion who have the Rh-negative factor."

5 [7], which imposes criminal liability for violating the hospitalization requirement of 34–23A–4, is unconstitutional. This statute holds a physician criminally liable for violating the hospitalization requirement without regard to the physician's intent. The Eighth Circuit has repeatedly found that criminal abortion statutes must contain an intent requirement. *See Miller,* 63 F.3d at 1465; *Fargo Women's Health Org. v. Schafer,* 18 F.3d 526 (8th Cir.1994).

[¶ 43] *Miller* found unconstitutional a South Dakota abortion regulation that, like SDCL 22–17–5, did not contain an intent requirement. The court held that "without a scienter requirement, this strict criminal-liability statute will have a 'profound chilling effect on the willingness of physicians to perform abortions,' It thus creates a substantial obstacle to a woman's right to have a pre-viability abortion in the state of South Dakota." *Id.* at 1465 (citations omitted). The Eighth Circuit in *Fargo* upheld an abortion regulation against a vagueness challenge because the statute did contain a scienter requirement. *See Fargo,* 18 F.3d at 534.

[¶ 44] SDCL 22–17–5 does not contain a scienter requirement. This chills the performance of abortions by requiring physicians to be absolutely certain that the pregnancy is earlier than the twelfth week of pregnancy. This chilling effect is an impermissible burden on women in South Dakota seeking an abortion. Thus, SDCL 22–17–5 is unconstitutional. Accordingly, it is ORDERED that:

[¶ 45] 1. The State's motion to dismiss for ripeness and standing (Docket 64) is denied.

[¶ 46] 2. The State's motion to certify a question of law to the South Dakota Supreme Court (Docket 22) is denied.

[¶ 47] 3. Plaintiffs' motion for summary judgment (Docket 60) is granted and the State is hereby enjoined from enforcing SDCL 22–17–5 and SDCL 34–23A–4.

[¶ 48] 4. The State's motion to vacate order granting plaintiffs' motion to file a supplemental motion for summary judgment (Docket 86) is denied as moot.

[¶ 49] 5. Plaintiffs' motion to file a second amended complaint (Docket 82) is denied as moot.

---

**7.** SDCL 22–17–5. "Any person who performs, procures or advises an abortion other than authorized by chapter 34–23A is guilty of a Class 6 felony."