#26570-a-JKK

**2014 S.D. 3**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

      v.

JASON D. TOBEN,                         Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
DEUEL COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RONALD K. ROEHR
Judge

* * * *

MARTY J. JACKLEY
Attorney General

BETHANNA M. FEIST
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                      and appellee.


STEVE MILLER
Sioux Falls, South Dakota          Attorney for defendant
                                      and appellant.

* * * *

ARGUED ON OCTOBER 1, 2013

OPINION FILED **01/29/14**

KONENKAMP, Justice

[¶1.]        Jason D. Toben was convicted of possessing and distributing synthetic marijuana.  He had been selling these products when they were legal, but they became illegal after emergency legislation took effect.  His defense at trial was that he mistakenly believed that the products had no illicit substances in them based on the package labeling and the representations from the commercial distributors.  In closing arguments, the prosecutor contended that ignorance of the law was no excuse, comparing the charges to a speeding violation.  Yet the crucial question for the jury was not whether Toben had knowledge of the law, but whether he had knowledge of the nature and character of the substances he was selling.  He claims plain error in the circuit court's failure to properly instruct the jurors on the element of knowledge.

## Background

[¶2.]        Toben was employed as a manager at The Chicago Avenue Bar in Goodwin, South Dakota.  The bar, owned by Phil Plunkett, openly sold synthetic marijuana to those at least eighteen years in age.  The products available for sale were posted on a board by name and price, and the cash obtained from the sales was placed in the cash register.  Both Toben and Plunkett knew that South Dakota had pending legislation banning synthetic marijuana.  Indeed, on February 23, 2012, the Governor signed into law a bill with an emergency clause making illegal "synthetic cannabinoids," defined as "[a]ny material, compound, mixture, or

preparation" containing "any quantity of . . . AM 2201," including its "homologues[.]" *See* SDCL 34-20B-14(46).[1]

[¶3.]     Before the new law was enacted, the South Dakota Division of Criminal Investigation and local law enforcement officers had received complaints about patrons at the Chicago Avenue Bar being under the influence of synthetic marijuana. In response to these complaints, the Division began an investigation. Agent Tyler Neuharth conducted a controlled buy on January 19, 2012. He observed the open sale of synthetic marijuana, and he himself purchased the product. He also saw patrons smoking the product in the bar.

[¶4.]     Agent Neuharth conducted a second controlled buy in February 2012, during which he discussed with Toben the legality of synthetic marijuana. Agent Neuharth asked Toben if the pending change in the law was going to affect their business. Toben replied, "They are not going to slow us down." The state laboratory tested the product purchased in February and found it to contain a compound called AM 2201, which was soon to become illegal.

[¶5.]     On March 6, 2012, after the law change, Agent Neuharth returned to the bar and purchased two more products from Toben. The packaging on one product displayed the following: "100% cannabinoid free — DEA compliant" and

---

1.     "Synthetic marijuana, which initially appeared in the United States in late 2008, typically consists of plant material laced with synthetic cannabinoids: chemicals that claim to provide the same effect as the active ingredient in marijuana, Δ9-tetrahydrocannabinol (THC)." *See* Jake Schaller, *Not for Bathing: Bath Salts and the New Menace of Synthetic Drugs,* 16 J. Health Care L. & Pol'y 245, 248, 267-68 (2013) (describing how regulators are "necessarily playing 'catch-up'" with manufacturers who modify their formulas to circumvent state laws).

"legal in 50 States. Does not contain any banned substances." Another package displayed the language, "100% compliant guaranteed" and "non cannabinoid." One product was called Hydro Kush, and the other, Tiger's Blood/Kryptonite. After the controlled buy, state chemist Roger Mathison analyzed these products. Mathison later testified that Tiger's Blood/Kryptonite contained AM 2201, and Hydro Kush contained MAM 2201, which is apparently a homologue of AM 2201, making both illegal as of February 23, 2012.[2] *See* SDCL 34-20B-14(46).

[¶6.] Toben was arrested and charged with two counts of unauthorized drug possession in violation of SDCL 22-42-5, one count of unauthorized drug possession or distribution in violation of SDCL 22-42-2, and one count of unauthorized drug possession or distribution in a drug free zone in violation of SDCL 22-42-19. A jury trial was held in September 2012. Agent Neuharth testified about the controlled purchases, confirming that the products were sold openly and that the cash from the sales was placed in the cash register. He told the jury that there was nothing on the packaging to inform Toben that the products contained banned substances. And both Agent Neuharth and state chemist Mathison conceded that laypersons would not know the chemical structure of these substances: the determination requires a chemist, lab equipment, and expert knowledge.

[¶7.] In his testimony, Toben admitted that he openly sold the products at the bar and that he, like the patrons, smoked them and became "high." Yet he

---

2. Although MAM 2201 is not specifically listed in Schedule I, Toben does not challenge its status as a controlled substance, and, in any event, it appears to be an AM 2201 homologue, prohibited by SDCL 34-20B-14(46). Mathison testified that MAM 2201 is in "the same structural group."

maintained that he did not know the products sold at the bar contained controlled substances. He explained that before and after the February 23 law change, he had several conversations with Plunkett about the legality of the products. He said that Plunkett was concerned that his products would no longer be legal under the new law. Therefore, he purchased different products from a company in Minnesota and obtained a laboratory report stating that a product did not contain certain listed synthetic cannabinoids, including AM 2201. Toben had seen this report, which was entered into evidence at trial through Agent Jeff Bellon, who testified that it was recovered during a search of Plunkett's car. The report indicated that the tested product was "Zombie Matter Novelty Sachet." There were no identifying marks on the report indicating the location of the laboratory or the name of the chemist who performed the analysis, but there was a statement declaring that "AI BioTech cannot be held responsible for misuse of this report, or misrepresentation of the finding presented in this report."

[¶8.] In his closing argument, the prosecutor compared the charges against Toben to a speeding violation:

> Wouldn't it be nice to tell an officer after you get caught speeding and he pulls you up and you say, but, Officer, I was told the speed limit doesn't apply during daylight hours. And he said, where did you get that from? Well, this person told me that I can speed on this road during daylight hours; and, therefore, I'm not guilty of speeding. That's his defense. That's not the law. Ignorance of the law is no defense.

Defense counsel did not object. [3]

---

3. Appellate counsel was not trial counsel.

[¶9.]    Toben's sole justification was that he made a mistake of fact.  His trial attorney told the jurors that the question they had to decide was "whether [Toben] knew that these packets or this substance had the illegal chemicals in them, which made them a controlled substance."  In support of this argument, counsel noted that the printing on the packets themselves indicated that the products were legally compliant.  And Toben relied on the laboratory report, as well as the representations from the commercial distributors in Minneapolis that the products contained no illegal substances.

[¶10.]    The State was required to show that Toben "knowingly possessed a controlled substance[.]"  *See* SDCL 22-42-5.  It is not a crime to possess a substance known simply as "synthetic marijuana," because, as the State's expert conceded, there are certain substances used to make synthetic marijuana that are legal.  Thus, knowledge of the presence of an illicit substance is an essential element to possession.  The circuit court gave two separate instructions on the question of knowledge:

> Instruction 12: The word "knowledge" or "knowingly" (or any derivative thereof) means only a knowledge that the facts exist which bring the act or omission within the provisions of any statute.  It does not require knowledge of the unlawfulness of the act or omission.

> Instruction 13: In the crime of unauthorized possession of controlled substance, as alleged in counts one and two, the defendant must have criminal intent.  To constitute criminal intent it is not necessary that there should exist an intent to violate the law.  When a person intentionally does an act which the law declares to be a crime, the person is acting with criminal intent, even though the person may not know the conduct is unlawful.

#26570

There is no dispute that the circuit court's Instruction 12 is consistent with the statutory definition of "knowingly" in SDCL Title 22, SDCL 22-1-2(1)(c), and South Dakota's criminal pattern jury instruction 1-11-2.[4]

[¶11.] During deliberations, the jury submitted the following question to the circuit court:

> *Is there further definition of the statement "It does not require knowledge of the unlawfulness of the act or omission," does this refer to the knowledge of the law, or knowledge of committing a legal/illegal act?*

The court responded by instructing the jury to consider its instructions as a whole and declined to give further guidance. The jury later submitted a second question:

> *Do counts # 1 and # 2 refer specifically to the substance(s) AM 2201 and MAM 2201 or any controlled drug or substance?*

The court again declined to give further guidance, told the jury that the "instructions previously given set forth all counts and the law which applies to those counts." In its third question, the jury asked:

> *Can we have the minutes on the questioning of the defendant?*

---

4. SDCL 22-1-2(1)(c) provides that knowingly "import[s] only a knowledge that the facts exist which bring the act or omission within the provisions of any statute. A person has knowledge if that person is aware that the facts exist which bring the act or omission within the provisions of any statute. Knowledge of the unlawfulness of such act or omission is not required[.]" Similarly, South Dakota's criminal pattern jury instructions provide that "[t]he word 'knowledge' or 'knowingly' (or any derivative thereof) means only a knowledge that the facts exist which bring the act or omission within the provisions of any statute. It does not require knowledge of the unlawfulness of the act or omission." SD Criminal Pattern Jury Instructions § 1, General Principals, 1-11-2.

-6-

The court responded, "A transcript cannot be prepared.  The jury must rely on its collective memory of questions and testimony."

[¶12.]       Toben was convicted of all four counts.  In seeking a new trial, he argued that there was insufficient evidence to prove he "knowingly possessed" a controlled substance.  His motion was denied, and the court sentenced him to concurrent terms of nine years on the first three counts, with five years suspended, and a consecutive sentence of nine years with four suspended on the fourth count.  Toben appeals asserting that the circuit court plainly erred when it gave the jury misleading and incomplete jury instructions on what is required to prove "knowing possession" of a controlled substance.

### 1. Proof of Knowledge

[¶13.]       On the question of knowledge, the State was required to prove, either directly or inferentially, Toben's mental state: his awareness of the character and nature of the substances he was possessing and selling.  *See State v. Barr*, 90 S.D. 9, 15, 237 N.W.2d 888, 891 (S.D. 1976); *see also Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 523, 114 S. Ct. 1747, 1753, 128 L. Ed. 2d 539 (1994).  With the State having the burden of proving knowledge beyond a reasonable doubt, the prosecutor muddied the issue by equating a traffic offense with the charges against Toben.  Speeding is a strict liability offense requiring no particular knowledge. *State v. Caddy*, 540 P.2d 1089 (Colo. 1975) (mistake due to defective speedometer no defense).  But as LaFave explains, "ignorance or mistake of fact or law is a defense

when it negatives the existence of a mental state essential to the crime charged." Wayne R. LaFave, 1 Subst. Crim. L. § 5.6 (2d ed. 2013).[5]

[¶14.] Whether Toben's claimed mistake was one of fact or law, the State had to prove Toben's "knowledge of that which he is [possessing and] distributing, not knowledge that it is a substance defined as the controlled substance under" SDCL 34-20B-14(46). *Barr*, 90 S.D. at 18, 237 N.W.2d at 892. Simply put, the prosecution had to disprove Toben's claimed mistaken mental state. *See* Wayne R. LaFave, 1 Subst. Crim. L. § 5.6 (2d ed. 2013). Our law requires that unlawful possession be knowing and intentional. It would be insufficient for the State to show that Toben knowingly possessed a substance, but *negligently* believed it to be a harmless substance. *See State v. Hopper,* 129 P.3d 1261, 1262 (Idaho Ct. App. 2005). Nor would it be adequate to prove that he *should have known* the material was a controlled substance. *Id.* A "knowing" act is one that is deliberate and conscious. Black's Law Dictionary 888 (8th ed. 2004).

[¶15.] Most states adopting the Uniform Controlled Substances Act, like South Dakota, hold that "the accused must not only know of the presence of the substance but also of the general character of the substance." *Dawkins v. State,* 547

---

5. LaFave writes further, "It bears repeating here that the cause of much of the confusion concerning the significance of the defendant's ignorance or mistake of law is the failure to distinguish two quite different situations: (1) that in which the defendant consequently lacks the mental state required for commission of the crime and thus, . . . has a valid defense; and (2) that in which the defendant still had whatever mental state is required for commission of the crime and only claims that he was unaware that such conduct was proscribed by the criminal law, which, . . . is ordinarily not a recognized defense." Wayne R. LaFave, 1 Subst. Crim. L. § 5.6 (2d ed. 2013).

A.2d 1041, 1046 n.10 (Md. Ct. App. 1988) (citing cases). Thus, it might have been helpful for the jury if the circuit court here had given a more explicit definition of "knowingly." Telling the jury that Toben had to have known the "character and nature" of the substance could have clarified a mistaken impression, especially with the prosecutor's inapt speeding analogy. Indeed, the jury's first question to the court during deliberations touched on this very point: did the court's instruction on knowledge "*refer to the knowledge of the law, or knowledge of committing a legal/illegal act?*" The court declined to answer the question with any further instructions. And Toben's trial counsel neither objected nor proposed a clarifying instruction.

[¶16.] We have never found inadequate the general definition of "knowingly" in our statute or in the South Dakota criminal pattern jury instructions. Other courts have accepted a similar general definition of "knowingly." *See, e.g.*, *People v. Low*, 232 P.3d 635, 645 (Cal. 2010). Toben relies on our holding in *Barr*, but that case dealt with the trial court's erroneous jury instruction that the law does not require that the accused know the nature of the substance. *See* 90 S.D. at 14, 237 N.W.2d at 890. Although a pinpoint definition may have been more helpful, we cannot say that the circuit court's definition of "knowingly" was erroneous.

[¶17.] A mistake of fact instruction also might have assisted the jury on the knowledge question. South Dakota Criminal Pattern Jury Instruction 2-8-1 provides:

> An act is not a crime when committed or omitted under an ignorance or mistake of fact which disproves any criminal intent. Where a person honestly and reasonably believes certain facts, and acts or fails to act based upon a belief in those facts,

which, if true, would not result in the commission of a crime, the person is not guilty.

See SDCL 22-3-1(3); *State v. Roach*, 2012 S.D. 91, ¶ 12 n.3, 825 N.W.2d 258, 262 n.3 (citation omitted).  But Toben's trial counsel did not propose this instruction, and it was not given.

### 2. Plain Error

[¶18.]     Criminal defendants are entitled to instructions on their theory of the case if there is evidentiary support and "'a proper request is made.'"  *State v. Frey*, 440 N.W.2d 721, 727 (S.D. 1989) (quoting *United States ex. rel Means v. Solem,* 646 F.2d 322, 328 (8th Cir. 1980)).  Toben did not object to the court's instructions or propose any additional instructions, but he seeks to invoke the plain error doctrine because he asserts that the circuit court's generic definition of "knowingly" deprived the jury of the necessary legal guidance on the elements of the offense.

[¶19.]     "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court."  SDCL 23A-44-15 (Rule 52(b)).  Toben must show not only that the instructions were erroneous, but also that the errors were prejudicial.  *See State v. Moran*, 2003 S.D. 14, ¶ 15, 657 N.W.2d 319, 324.  Prejudicial error occurs when "the jury probably would have returned a different verdict if the faulty instruction had not been given."  *Id.*  Toben also bears an additional burden.  Since his lawyer did not object to the court's instructions or propose alternative instructions, Toben must establish plain error.  Plain error occurs when there is "(1) error, (2) that is plain, (3) affecting substantial rights; and only then may we exercise our discretion to notice the error if (4) it 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'"  *State*

*v. Robinson*, 1999 S.D. 141, ¶ 17, 602 N.W.2d 730, 735 (quoting *State v. Nelson*, 1998 S.D. 124, ¶ 8, 587 N.W.2d 439, 443).

[¶20.]       To show how substantial the court's error was, Toben points to the questions the jurors asked, in which they sought guidance on what knowledge was required in order to convict.  Combining those questions with the prosecutor's closing argument — equating the requisite knowledge for possession of a controlled substance with the strict liability attendant to a speeding offense — Toben maintains that the result of the trial would have been different had the jury been properly instructed.

[¶21.]       Since we have concluded that the court adequately instructed the jury on the element of knowledge in the absence of a request for a more precise definition, what remains to decide is whether it was plain error not to give a mistake of fact instruction sua sponte.  We have no precedent on this question, but courts in California have held that a trial court has no sua sponte duty to instruct on the doctrine of mistake of fact when knowledge is an element of the offense. *People v. Jennings,* 237 P.3d 474, 517-18 (Cal. 2010); *People v. Lee,* 28 Cal. App. 4th 1724, 1733-34 (1994) (accord).  These courts reason, we think persuasively, that when a jury is properly instructed on the mental state element, any duty to give a sua sponte instruction will not apply to a defense that serves only to negate the mental state element of the charged offense.

[¶22.]       Even if the failure to instruct sua sponte on mistake of fact was plain error and affected Toben's substantial rights, we still exercise our discretion to grant relief only if the error "seriously affects the fairness, integrity or public

reputation of judicial proceedings." *See Nelson*, 1998 S.D. 124, ¶ 8, 587 N.W.2d at 443 (citations omitted). We invoke this discretion cautiously and only in "'exceptional circumstances.'" *Id.* (citations omitted). Such circumstances may include instances in which "'a miscarriage of justice would otherwise result,'" as in cases of actual innocence. *Id.* (citations omitted). This is not such a case.

[¶23.]     Proof that Toben knew the substances he possessed and sold contained banned substances can be inferred from the evidence. He sold products he believed mimicked the effects of marijuana on users. And despite his claimed reliance on packaging and vendor assurances of legality, he himself smoked the substances he was selling and got high. Knowing that the Legislature was about to prohibit synthetic marijuana, an ordinary person would be aware of the high probability that a chemical substance designed to simulate the effects of marijuana might well be included in the ban. Yet he told an undercover agent that changes in the law were "not going to slow us down." While the State never yields the burden of proving knowing possession, one cannot consciously avoid learning the nature of a substance to later assert ignorance of its nature. *Barr*, 90 S.D. at 18, 237 N.W.2d at 894; *see also United States v. Sdoulam*, 398 F.3d 981, 993 (8th Cir. 2005). Whether requests for a more precise definition of "knowingly" and a mistake of fact instruction, along with a timely objection to the prosecutor's speeding analogy would have resulted in a different verdict may remain matters for further assessment. But these oversights hardly impugn the integrity or reputation of judicial proceedings or establish a miscarriage of justice. Accordingly, as with most

#26570

claims of deficient trial attorney performance, a petition for habeas corpus presents the more appropriate avenue for relief.

[¶24.]    Affirmed.

[¶25.]    GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.