#27473-a-JMK

**2016 S.D. 93**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

   v.

CHRISTOPHER DAVID UHING,                    Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JONI M. CUTLER
Judge

* * * *

MARTY J. JACKLEY
Attorney General

GRANT FLYNN
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.


WANDA HOWEY-FOX of
Harmelink, Fox & Ravnsborg
Yankton, South Dakota                    Attorneys for defendant
                                        and appellant.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 29, 2016

OPINION FILED **12/14/16**

#27473

KERN, Justice

[¶1.] Defendant was indicted for eight drug-related offenses in March 2014. He was convicted of seven of the eight counts, six of which were felonies. The trial court sentenced him to an aggregated total of 45 years in the penitentiary and 30 days in the county jail. The court suspended all but 6 years and 30 days of the prison sentence and ordered that the county jail sentence run concurrently. On appeal, defendant contends he is entitled to a new trial because there was insufficient evidence to convict him at trial. He also alleges that his sentence constituted cruel and unusual punishment under the Eighth Amendment. We affirm.

**Background**

[¶2.] Christopher Uhing resided in Sioux Falls with his girlfriend, Brooke Schrempp. The residence was located within a drug-free zone near an elementary school. Sioux Falls Area Drug Task Force Detective John Spaeth received numerous tips that the occupants of the residence were dealing drugs. Officers began surveillance on the home and observed a number of vehicles associated with drug trafficking stopping at the home for short intervals. Officers conducted a traffic stop of one vehicle after it left the residence. A search of the driver revealed nearly a gram of hashish and an ounce of marijuana. The following day, Detective Spaeth obtained a warrant for the search of the home. During the search, officers found evidence of drug use and distribution including more than one-half pound of marijuana, drug paraphernalia, pipes, a digital scale, jeweler's baggies, and a safe containing money, drugs, and another digital scale. Additionally, the officers found

-1-

equipment and supplies for a marijuana growing operation. The officers also discovered items used to manufacture hashish. Such supplies included two capped tubes with holes drilled through the caps. One was packed with compressed marijuana. The search also revealed 44 empty cans of butane and large bags with mesh bottoms used to filter marijuana to make hashish.

[¶3.] Uhing and Schrempp were indicted as codefendants and charged with eight drug-related offenses: (1) possession of one-half pound but less than one pound of marijuana, a class 5 felony, in violation of SDCL 22-42-6; (2) possession of one-half pound but less than one pound of marijuana with the intent to distribute or dispense marijuana, a class 4 felony, in violation of SDCL 22-42-7 (minimum mandatory sentence of thirty days); (3) possession of a controlled substance, to wit hashish, a class 5 felony, in violation of SDCL 22-42-5; (4) possession of a controlled substance, to wit cocaine, a class 5 felony, in violation of SDCL 22-42-5; (5) keeping or maintaining a place where controlled substances are kept, used or sold, a class 5 felony, in violation of SDCL 22-42-10; (6) possession of one-half pound but less than one pound of marijuana with the intent to distribute or dispense marijuana within one thousand feet of an elementary school, a class 4 felony, in violation of SDCL 22-42-19 (minimum mandatory sentence of five years to run consecutively to the sentence for the principal felony); (7) possession with intent to manufacture, distribute, or dispense a controlled drug or substance listed in schedule I, to wit hashish, a class 4 felony, in violation of SDCL 22-42-2 (minimum mandatory one year sentence); and (8) possession with intent to use drug paraphernalia, a class 2 misdemeanor, in violation of SDCL 22-42A-3.

[¶4.]        The day prior to Uhing and Schrempp's joint trial, the State moved to amend the indictment as to Counts 3 and 7, removing the word "hashish" and replacing it with "Delta-9-tetrahydrocannibinol AKA hashish." Uhing, having previously agreed to stipulate to the amendment, did not object to the State's request.

[¶5.]        At trial, Detective Spaeth testified regarding his investigation and the various methods of manufacturing hashish. He described one method of making hashish which involves flushing a solvent, such as butane, over marijuana placed in a container. The solvent causes the concentrated marijuana to liquefy so that it can be filtered. Officers also discovered a glass jar containing a filter with fine green powder at the bottom. Detective Matia testified that this jar and filter were consistent with another method of manufacturing hashish using dry ice. The empty tube, green powder, and the bags found in the residence tested positive for Delta-9-Tetrahydrocannibinol. Detective Spaeth also testified that some of the items found in the residence were indicative of distribution including the jeweler's bags and digital scales containing marijuana residue. He told the jury that digital scales were commonly used to weigh marijuana before packaging. He estimated the street value of the .53 pounds of marijuana found in the house at $2,400. He also testified about his interview with Schrempp shortly after her arrest. Schrempp admitted to Detective Spaeth that she sold marijuana from the residence to someone who was "busted" the day before the search. Detective Spaeth also testified about finding a message on Schrempp's phone from someone who "need[ed] a bag." Schrempp did not testify at trial.

[¶6.]	Uhing did testify, however, and told the jury that he smoked marijuana and hashish and knew both substances were in the residence. He testified that he previously lived in Colorado and had a license to grow marijuana for medical use and had made hashish using the "ice water" method. He explained that the items found in the house were supplies from his activities in Colorado. He denied growing marijuana, manufacturing hashish, or selling either substance in South Dakota. Uhing stated that he bought marijuana in bulk, usually in quarter pound increments, for his own personal use as he received a better price by buying larger quantities. The scales were only to verify that he received the amount of marijuana that he paid for in his drug transactions.

[¶7.]	At the close of the State's case, Uhing moved for a judgment of acquittal, which the trial court denied. During jury deliberations, the jury submitted a written question to the court stating, "Can we get the portion of Detective Spaeth's testimony regarding [Schrempp's] initial interview after arrest?" The trial court did not notify the parties that it had received a question from the jury. Instead, the court sent the jury the preliminary jury instructions highlighting a portion of Instruction Number 4. The highlighted portion read, "At the end of the trial, you must make your decision based upon what you recall of the evidence. You will not have the written transcript to consult, and the court reporter will not be required to read back lengthy testimony. Therefore, you should pay close attention to the testimony as it is presented." After the jury reached a verdict, the trial court informed counsel on the record of the question and the court's method of answering the question. Uhing did not object to the action taken by the trial court.

[¶8.] The jury convicted Uhing on all counts except for Count 4, possession of cocaine. The court sentenced Uhing for the seven offenses to an aggregated total of 45 years in the state penitentiary and 30 days in the county jail. However, the court suspended all but 6 years and 30 days of the penitentiary sentence and ordered that Uhing's 30-day jail sentence be served concurrently.

[¶9.] Uhing appeals his conviction and sentence, arguing five issues:

1. Whether the trial court erred by denying Uhing's motion for acquittal at the close of the State's case.

2. Whether the trial court erred by allowing the State to amend the indictment the day prior to trial.

3. Whether the trial court erred by not instructing the jury as to specific intent.

4. Whether the trial court erred by failing to notify the parties of the jury question.

5. Whether Uhing's sentence violates the Eighth Amendment to the United States Constitution.

## Decision

*Insufficiency of the evidence*

[¶10.] Uhing first argues that the State failed to present sufficient evidence to sustain a conviction and that the court erred in denying his motion for acquittal. The standard of review for denial of a motion for judgment of acquittal is de novo. *State v. Doap Deng Chuol*, 2014 S.D. 33, ¶ 36, 849 N.W.2d 255, 264. In reviewing this ruling, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Plenty Horse*, 2007 S.D. 114, ¶ 5, 741 N.W.2d 763, 765; *see also State v. Shaw*, 2005 S.D. 105, ¶ 19, 705

N.W.2d 620, 626. "If the evidence, including circumstantial evidence and reasonable inferences drawn therefrom sustains a reasonable theory of guilt, a guilty verdict will not be set aside." *State v. Hauge*, 2013 S.D. 26, ¶ 12, 829 N.W.2d 145, 149.

[¶11.] Uhing repeatedly asserts that there was no proof presented at trial of his intent to distribute illegal drugs, nor was there any evidence that he was engaged in manufacturing illegal drugs. However, "[t]he State may . . . prove all elements of an offense through circumstantial evidence." *State v. Fischer*, 2016 S.D. 1, ¶ 26, 873 N.W.2d 681, 692. This case is similar to our decision in *State v. Overbey*, where we upheld a conviction for possession with the intent to distribute based on the quantities of the drugs found and the presence of a digital scale. 2010 S.D. 78, ¶ 29, 790 N.W.2d 35, 43. In this case, the police found items in Uhing's house that are commonly used both for distribution and the manufacture of hashish. As evidence of distribution, law enforcement discovered digital scales covered with marijuana residue and jeweler's baggies. Uhing also admitted to possessing large amounts of marijuana; and Schrempp, Uhing's girlfriend, admitted to police that she had sold both hashish and marijuana from the residence the day before the warrant was executed.[1] Meanwhile, the presence of the 44 empty cans of butane, large bags with mesh bottoms, the glass jar containing a filter, and capped tubes with holes serve as evidence of manufacturing. Detective Spaeth testified

---

1. Schrempp actually told Detective Spaeth that both she and Uhing sold drugs. But to avoid any issues regarding the admissibility of interlocking confessions of codefendants under *United States v. Bruton*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), the trial court excluded any reference to Uhing in Schrempp's statements offered at trial.

that such items are used in the manufacture of hashish, and forensic testing by the State's expert revealed hashish residue on these items. Uhing further testified that he had previously grown marijuana and manufactured hashish in Colorado.

[¶12.] Uhing's testimony that the items were used exclusively in Colorado presented a credibility determination for the jury's resolution. "[I]n reviewing the sufficiency of the evidence . . . [we] 'will not usurp the jury's function in resolving conflicts in the evidence, weighing credibility, and sorting out the truth.'" *State v. Guthmiller*, 2014 S.D. 7, ¶ 27, 843 N.W.2d 364, 372 (quoting *State v. Dowty*, 2013 S.D. 72, ¶ 15, 838 N.W.2d 820, 825). While it may be true that the State did not present any direct evidence indicating Uhing's intent to distribute marijuana or manufacture hashish, the State did present a substantial amount of circumstantial evidence from which the jury could have deduced Uhing's guilt. There was sufficient evidence to sustain the convictions. The court did not err by denying Uhing's motion for acquittal.

*Amendment of the Indictment*

[¶13.] Uhing next argues that the court should not have permitted the State to amend the indictment the day prior to trial. However, Uhing agreed to this amendment at trial and offered no objection. Nor does he argue on appeal that the court's failure to do so was plain error. As Uhing failed to raise the issue below, he waives its consideration on appeal. *State v. Miller*, 2014 S.D. 49, ¶ 9 n.1, 851 N.W.2d 703, 705, n.1 (quoting *State v. Roach*, 2012 S.D. 91, ¶ 27, 825 N.W.2d 258, 266) ("[F]ailure to object at trial constitutes a waiver of that issue on appeal.").

*Specific Intent Instruction*

[¶14.]     Uhing argues that the court should have instructed the jury that the offenses of possession with intent to distribute marijuana and possession with intent to manufacture, distribute, or dispense a controlled drug or substance, listed in schedule I were specific intent crimes. In support of this argument, Uhing draws our attention to *State v. Liaw*, 2016 S.D. 31, 878 N.W.2d 97. However, that case is distinguishable. Importantly, the defendant in *Liaw* requested and proposed in writing an alternative jury instruction on specific intent preserving the issue for appeal. *Id.* ¶ 6. Uhing, however, made no such request either orally or in writing. Because Uhing failed to preserve this question by requesting a proposed jury instruction for the court's consideration, the issue is waived on appeal. *State v. Talarico*, 2003 S.D. 41, ¶ 33, 661 N.W.2d 11, 23 (holding an issue regarding jury instructions waived when the party did not propose an alternative instruction at trial). As with the preceding issue, Uhing did not argue that the trial court's decision to give a general intent instruction was plain error.

*Jury Question*

[¶15.]     Uhing argues that the court erred by failing to notify the parties of the jury's question. However, when the trial court made a record regarding the jury's question, Uhing failed to object. Although Uhing argues that the manner in which the court handled the question constitutes plain error, he cites no authority in support of this assertion. Accordingly, Uhing has waived consideration of this issue on appeal. *State v. Golliher-Weyer*, 2016 S.D. 10, ¶ 17, 875 N.W.2d 28, 34 (citing

#27473

*State v. Pellegrino,* 1998 S.D. 39, ¶ 22, 577 N.W.2d 590, 599 (failure to cite authority waives the issues)).

*Cruel and Unusual Punishment*

[¶16.]      Lastly, Uhing argues that his sentence was cruel and unusual in violation of the Eighth Amendment to the United States Constitution.  Our review of an Eighth Amendment challenge consists of comparing the gravity of the offense to the harshness of the penalty.  *State v. Traversie,* 2016 S.D. 19, ¶ 16, 877 N.W.2d 327, 332.  "This comparison rarely 'leads to an inference of gross disproportionality' and typically marks the end of our review[.]"  *State v. Chipps,* 2016 S.D. 8, ¶ 38, 874 N.W.2d 475, 489 (quoting *State v. Garreau,* 2015 S.D. 36, ¶ 9, 864 N.W.2d 771, 775).  But "[i]f the penalty imposed appears to be grossly disproportionate to the gravity of the offense, then we will compare the sentence to those 'imposed on other criminals in the same jurisdiction' as well as those 'imposed for commission of the same crime in other jurisdictions.'"  *Id.* (quoting *Solem v. Helm,* 463 U.S. 277, 291, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d 637 (1983)).

[¶17.]      First, we examine the gravity of the offense, i.e., "the offense's relative position on the spectrum of all criminality."  *Id.* ¶ 35.  Uhing was convicted of one misdemeanor and six felony drug crimes including possession with the intent to manufacture and distribute a schedule I controlled drug.  While these crimes are classified as nonviolent in nature, they are nonetheless serious felonies.  "Selling drugs is a harsh and unsavory business. . . .  Drug abuse has devastated countless American youth to include young South Dakotans.  Drugs are a peril to our society.  Our [L]egislature, recognizing this, made [manufacture and distribution of certain

controlled substances and marijuana] a felony—a harsh crime." *See State v. Pettis*, 333 N.W.2d 717, 720 (S.D. 1983). Additionally, "the circumstances of the crime of conviction affect the gravity of the offense." *Chipps*, 2016 S.D. 8, ¶ 36, 874 N.W.2d at 488. Here, there was substantial evidence that the defendant was distributing marijuana and involved in the manufacture and distribution of controlled substances, and, to make matters worse, all within a few hundred feet of an elementary school. Uhing's offenses are serious crimes on the spectrum of criminality.

[¶18.] Next, we examine the harshness of the penalty, i.e., "the penalty's position on the spectrum of *all permitted punishments*." *Rice*, 2016 S.D. 18, ¶ 19, 877 N.W.2d at 82 (quoting *Chipps*, 2016 S.D. 8, ¶ 37, 874 N.W.2d at 488). The most severe punishments authorized by the Legislature include the death penalty (class A felonies), mandatory life in prison (class A and B felonies) and nonmandatory life sentences (class C felonies). Uhing argues that his aggregate prison term of 45 years is grossly disproportionate. Initially, this Court has determined that, "[w]hen reviewing sentences, we evaluate the individual sentence for each count, opposed to scrutinizing the aggregate sentence." *State v. Dubois*, 2008 S.D. 15, ¶ 41, 746 N.W.2d 197, 210; *see also State v. Buchhold*, 2007 S.D. 15, ¶¶ 30-33, 727 N.W.2d 816, 823-24.[2] Moreover, Uhing does not consider the fact that the court suspended

---

2. In *Buchhold*, we stated that "imposition of consecutive sentencing is a discretionary matter for the sentencing court[.]" *Buchhold*, 2007 S.D. 15, ¶ 33, 727 N.W.2d at 824. As such, we review sentences individually rather than in the aggregate. *Dubois*, 2008 S.D. 15, ¶ 41, 746 N.W.2d at 210. To otherwise enable a defendant to seek review of an aggregated sentence could produce "the ridiculous consequence of enabling [an offender], simply by

(continued . . .)

most of his sentence.  Uhing must serve 5 years of his 10-year sentence for Count 6

(possession with intent to distribute in drug-free zone), one year of his 10-year

sentence for Count 7 (possession with intent to manufacture controlled substance),

30 days of his 10-year sentence for Count 2 (possession with intent to distribute

more than one-half pound to one pound of marijuana), and 30 days in jail for Count

8 (possession of drug paraphernalia).  His sentences for Counts 1, 3, and 5 were

suspended in their entirety, leaving Uhing to serve a total of 6 years and 30 days in

the penitentiary and 30 days in the county jail to run concurrently.  Uhing will be

eligible for parole, which will reduce the amount of time he will actually serve,

further diminishing the harshness of the sentence.  *See Chipps*, 2016 S.D. 8, ¶ 37,

874 N.W.2d at 488 ("The possibility of parole is also considered in judging the

harshness of the penalty.").  Although Uhing will be under supervision for many

years, he committed a number of serious offenses.  None of the individual sentences

are excessively harsh.  When comparing the penalty to the most severe

---

(. . . continued)

    recidivating, to generate a colorable Eighth Amendment claim."  *Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001).  Such a review, moreover, "would require us to find that virtually any sentence, however short, becomes cruel and unusual punishment when the defendant was already scheduled to serve lengthy sentences for prior convictions."  *United States v. Schell*, 692 F.2d 672, 675 (10th Cir. 1982).

    Nevertheless, we do not foreclose the possibility that in an extreme case an aggregated sentence could be so severe as to generate an Eighth Amendment violation.  We leave resolution of that question for an appropriate case.  *See State v. Blair*, 2006 S.D. 75, ¶ 78 n.22, 721 N.W.2d 55, 75 n.22 (Konenkamp, J., concurring in result) ("For example, consecutive sentences amounting to life in prison or for convictions on several offenses committed simultaneously may be such instances."); *see also State v. Bruce*, 2011 S.D. 14, ¶ 47, 796 N.W.2d 397, 410 (Severson, J., concurring) ("[W]e should be open to review aggregate penalties that conflict with constitutional principles.")

punishments authorized by the Legislature, the harshness of the penalty received by Uhing is not disproportionate to the gravity of his offenses. Uhing's sentence does not constitute cruel and unusual punishment under the Eighth Amendment.

## Conclusion

[¶19.] The State presented sufficient evidence at trial to convict Uhing of the charges, and the trial court did not err by denying his motion for a judgment of acquittal. Uhing's sentences did not violate the Eighth Amendment. Uhing failed to properly preserve his remaining issues for appeal.

[¶20.] Affirmed.

[¶21.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.