#28025-a-SLZ
**2017 S.D. 65**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

> v.

CHRISTOPHER MARTIN,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE WALLY EKLUND
Retired Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

MATTHEW W. TEMPLAR
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                         and appellee.

MATTHEW T. STEPHENS
Rapid City, South Dakota                Attorney for defendant
                                         and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 28, 2017
OPINION FILED **11/01/17**

#28025

ZINTER, Justice

[¶1.]     Christopher Martin appeals from his conviction of unlawfully possessing a controlled substance. He contends the State's evidence was insufficient to prove he knowingly possessed oxycodone. We affirm.

[¶2.]     On September 15, 2015, Rapid City Police Officer Eric Holmquist located an abandoned vehicle that Martin had reported stolen. While waiting for Martin to arrive, Holmquist determined Martin had an outstanding arrest warrant. When Martin arrived, he was arrested on the warrant and searched incident to arrest. Holmquist found twenty-three oxycodone pills in Martin's pocket, along with ten $100 bill and a combination of smaller bills. The pills appeared to be prescription medication but they were wrapped in cellophane from cigarette packaging. Martin claimed that the pills belonged to "a friend or friends," and that he was unaware of what they were.

[¶3.]     Detective Jim Ganser started a follow-up investigation. Martin told Ganser the pills belonged to "Jessica," but Martin did not provide a last name. Martin claimed Jessica must have dropped the pills in the pickup he was driving when he went to her residence to talk to her about his stolen vehicle. However, Martin inconsistently stated that Jessica never got into the pickup and that she only talked to him through the passenger window. Although Martin also indicated he had been to Jessica's home several times, he claimed he did not know her address—so he drew a map. Because the map did not lead to Jessica's home, Ganser used a property management company to determine Jessica's last name and address.

-1-

[¶4.]      Jessica's statements to Ganser was more incriminatory than exculpatory. She told Ganser that Martin was driving a motorcycle, not a pickup, when he came to her home. At trial, Jessica also disclosed she kept prescription oxycodone and other similar looking pain medication in her house. She explained that she had been taking oxycodone for approximately three or four years for chronic pain. Although Jessica was on probation for attempting to obtain more oxycodone by calling in her own prescription, she denied selling or giving any of her medications to Martin.[1] She did, however, testify that Martin had access to her home. She testified Martin was a close acquaintance that she had known for at least a year and a half. She also testified that she had given Martin a key to her home prior to travelling to Utah in the late summer of 2015; and the day before his arrest, Martin had been in her home discussing his stolen vehicle.

[¶5.]      Martin moved for judgments of acquittal at the close of the State's evidence and after the jury verdict. Both motions were denied. Martin now appeals. He concedes he knowingly possessed the pills, but he contends the evidence was insufficient to prove he knowingly possessed oxycodone, a controlled drug.

[¶6.]      In reviewing the denial of a motion for judgment of acquittal, "we determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

---

1.      Detective Ganser indicated it was hard to determine if there was a shortage of oxycodone in Jessica's prescription bottle. Her pills were unorganized and her oxycodone prescription bottle contained both oxycodone and another pain medication that was similar in appearance to oxycodone.

crime beyond a reasonable doubt.'" *State v. Uhing*, 2016 S.D. 93, ¶ 10, 888 N.W.2d 550, 553-54 (quoting *State v. Plenty Horse*, 2007 S.D. 114, ¶ 5, 741 N.W.2d 763, 765). "We will not 'resolve conflicts in the evidence, assess the credibility of witnesses, or reevaluate the weight of the evidence.'" *State v. Hauge*, 2013 S.D. 26, ¶ 12, 829 N.W.2d 145, 149 (quoting *State v. Morgan*, 2012 S.D. 87, ¶ 10, 824 N.W.2d 98, 100). "If the evidence, including circumstantial evidence and reasonable inferences drawn therefrom sustains a reasonable theory of guilt, a guilty verdict will not be set aside." *Id.* This is a question of law that we review de novo. *State v. Linson*, 2017 S.D. 31, ¶ 5, 896 N.W.2d 656, 659.

[¶7.]        Under South Dakota law, "[n]o person may knowingly possess a controlled drug or substance unless the substance was obtained directly or pursuant to a valid prescription or order from a practitioner . . . ." SDCL 22-42-5. Affording the most natural reading to language like that found in SDCL 22-42-5, "the word 'knowingly' applies not just to the statute's verb[ ] [("possess")] but also to the object of [that] verb[ ]—'a controlled substance.'" *See McFadden v. United States*, ___U.S. ___, 135 S. Ct. 2298, 2304, 192 L. Ed. 2d 260 (2015) (citations omitted) (extending the "knowing" requirements found in 21 U.S.C. § 841(a)(1) (2010)[2] to controlled substance analogues under 21 U.S.C. § 813 (2012)[3]). In interpreting our statutory

---

2.    21 U.S.C. § 841(a)(1) (2010) states that "[I]t shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance[.]"

3.    21 U.S.C. § 813 (2012) states "A controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I."

language, we have also stated the State must prove the defendant "*knowingly*

possessed a *controlled* substance."[4] *See State v. Toben*, 2014 S.D. 3, ¶ 10, 842

N.W.2d 647, 649 (emphasis added) (citing SDCL 22-42-5). Thus, we have indicated

"possession requires that an individual be aware of the presence and character of

the [drug]." *State v. Riley*, 2013 S.D. 95, ¶ 16, 841 N.W.2d 431, 436 (quoting *State v.*

*Mattson*, 2005 S.D. 71, ¶ 22, 698 N.W.2d 538, 547); *accord Toben*, 2014 S.D. 3, ¶ 13,

842 N.W.2d at 651 (quoting *Dawkins v. State*, 547 A.2d 1041, 1046 n.10 (Md. 1988))

("Most states adopting the Uniform Controlled Substances Act, like South Dakota,

hold that 'the accused must not only know of the presence of the substance but also

of the general character of the substance.'"); *see also State v. Barr*, 237 N.W.2d 888,

891 (S.D. 1976) (citing *State v. Kietzke*, 85 S.D. 502, 186 N.W.2d 551 (1971))

(recognizing the Court has held knowledge of the drug's character is an element of

the charge of unlawful possession). But we also agree with many other jurisdictions

holding that a defendant need not "know the exact nature of the substance in his

---

4.    The South Dakota Legislature defines the *mens rea* requirement for all crimes involving the mental state of "knowledge" or "knowingly."

> The words, "knowledge, knowingly," and all derivatives thereof, import only a knowledge that the facts exist which bring the act of omission within the provisions of any statute. A person has knowledge if that person is aware that the facts exist which bring the act or omission within the provisions of any statute. Knowledge of the unlawfulness of such act or omission is not required[.]

SDCL 22-1-2(1)(c).

possession, only that it was a controlled substance of some kind." *United States v. Martin*, 274 F.3d 1208, 1210 (8th Cir. 2001).[5]

[¶8.]     Therefore, the question in this appeal is whether the evidence was sufficient to prove Martin knew the pills he possessed were a controlled substance of some kind. Although there was no direct evidence on that point, the State was entitled to prove that element "through circumstantial evidence." *Uhing*, 2016 S.D. 93, ¶ 11, 888 N.W.2d at 554. Here, when Martin was arrested, he was not just carrying prescription pills in his pocket, he was carrying pills wrapped in cellophane together with a large number of $100 dollar bills. Thereafter, he offered a number of inconsistent and demonstrably false stories concerning the source of the drugs. There was also evidence that Martin had access to Jessica's prescription oxycodone. Jessica was unorganized in how she stored her pills; Martin had a key to Jessica's

---

5.     *See also United States v. De La Torre*, 599 F.3d 1198, 1204 (10th Cir. 2010) ("The Government can establish the mens rea for the possession element by proving only that the defendant knew he possessed some controlled substance."); *United States v. Abdulle*, 564 F.3d 119, 125 (2d Cir. 2009) ("[T]he law is settled that a defendant need not know the exact nature of a drug in his possession . . . [only that he] possesses some controlled substance."); *United States v. Carranza*, 289 F.3d 634, 644 (9th Cir. 2002) ("A defendant can be convicted of [importing or possessing a drug] if he believes he has some controlled substance in his possession."); *United States v. Carrera*, 259 F.3d 818, 830 (7th Cir. 2001) ("The government need only prove that the defendant was aware that some controlled substance was involved."); *United States v. Leavitt*, 878 F.2d 1329, 1337 (11th Cir. 1989) ("[T]he government need not prove that [the defendant] actually knew that the substance involved was methaqualone as long as he knew he was importing a controlled substance."). As the Virginia Court of Appeals noted in a case involving a similar statute, "a defendant need know only that he is possessing a controlled substance to be guilty." *Sierra v. Commonwealth*, 722 S.E.2d 656, 662 (Va. Ct. App. 2012); *see also State v. Neujahr*, 540 N.W.2d 566, 572 (Neb. 1995) ("[T]he state must prove that [the defendant] knew the pills he possessed were a controlled substance, not that he knew the pills were clorazepate.").

residence; she had recently been away in Utah; and the pills in Martin's pocket were of the same appearance as the type in Jessica's prescription bottle. Ultimately, Martin's own defense enabled the jury to infer he knew the pills were oxycodone. Jessica was Martin's friend and acquaintance for over a year; she had been taking prescription oxycodone for chronic pain during this friendship; she was on probation for trying to illegally obtain more; and the pills Martin possessed appeared to be the same type as Jessica's oxycodone. From this evidence, the jury could have believed that Martin was in possession of Jessica's pills, and if that was the case, he certainly would have known that they were oxycodone.

[¶9.] "Ultimately, it was for the jury to resolve the factual conflicts, weigh credibility, and sort out the truth." *State v. Guthmiller*, 2014 S.D. 7, ¶ 27, 843 N.W.2d 364, 372. When viewed cumulatively and taken in a light most favorable to the jury's verdict, there was sufficient evidence and inferences therefrom for a rational jury to have found that Martin knew the pills he possessed were a controlled substance.

[¶10.] Affirmed.

[¶11.] GILBERTSON, Chief Justice, and SEVERSON and KERN, Justices, and WILBUR, Retired Justice, concur.